**Donald M. RICHARDSON, Plaintiff,**

v.

**NASSAU COUNTY; Sheriff Joseph Jablonsky; Dr. Kashimawo; RN Terry Ferguson; Dr. John Doe (Dr. Furbert), Defendants.**

**No. 99 CV 2051(ADS)(ETB).**

United States District Court, E.D. New York.

Aug. 13, 2003.

Donald M. Richardson, Hempstead, NY, Plaintiff Pro Se.

Nassau County Attorney's Office by Catherine N. Gray, Assistant County Attorney, Mineola, NY, for Defendants Nassau County, Sheriff Joseph Jablonsky, and RN Terry Ferguson.

No Appearance for Defendant Dr. Kashimawo.

No Appearance for Defendant Dr. John Doe (Dr. Furbert).

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action involves claims by Donald M. Richardson ("Richardson" or the "plaintiff") that Nassau County, Sheriff Joseph Jablonsky ("Sheriff Jablonsky"), Dr. Kashimawo, RN Terry Ferguson ("Nurse Ferguson"), and Dr. John Doe (Dr. Furbert) (collectively, the "defendants") violated the Eighth and Fourteenth Amendment due to their failure to provide him with adequate medical care when he was a pretrial detainee at the Nassau County Correctional Center ("NCCC").

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated. On March 6, 1996, the plaintiff was incarcerated as a pretrial detainee at the NCCC. On that day, he reported to Nurse Ferguson, the intake examining nurse, that he suffered from glaucoma in his left eye and that he was taking "Propene, Pylocarpine 4% and Timoptic" to treat and control the glaucoma. After the examination, the plaintiff met with Dr. Kashimawo and also informed him that he had glaucoma in his left eye and was taking medication to treat it. An interdepartmental memo from NCCC to the Nassau County Medical Center ("NCMC"), dated March 6, 1996, reveals that Dr. Kashimawo requested an ophthalmology consult, stating that "I/M claims he has lost vision in the affected eye but asking for timoptic and pilocarpine." "ASAP" is written at the top, right-hand corner of the memo. Richardson claims that on or about March 8, 1996, Dr. John Doe (Dr. Furbert) stated that the plaintiff would receive his medication "as soon as possible." He also advised the plaintiff not to request medication or sign up for sick call roster to request an appointment with an eye doctor because an appointment had to be made at the NCMC Ophthalmology Clinic.

Thereafter, the plaintiff signed up for sick call at the NCCC on the following days for unrelated medical ailments: (1) March 10, 1996 for "mental health" and "broken left rib; need pain killer"; (2) March 24, 1996 for "dentist, toothache"; (3) March 31, 1996 for "dentist", "stomach problems", "head aches"; (4) April 1, 1996 for "dentist", "toothache", "pain in left

foot"; and (5) April 23, 1996 for "doctor", "eye drops", "cold medicine." On April 23, 1996, the plaintiff learned that an appointment had not yet been made with the NCMC with regard to his glaucoma. On April 24, 1996, the plaintiff was again examined and on that day a copy of Dr. Kashimawo's March 6, 1996 memo was finally faxed to the NCMC. On April 26, 1996, 51 days after the plaintiff informed Nurse Ferguson and Dr. Kashimawo of his glaucoma condition, Dr. Alejandro Bevacqua from the NCMC Ophthalmology Clinic examined Richardson and concluded "IOP [intra-ocular pressure] very high, will put back on meds."

The plaintiff claims that his glaucoma condition became aggravated which resulted in optic nerve damage, rendering him legally blind in his left eye. According to Richardson, the damage occurred between the time he was first incarcerated on March 6, 1996 and the time Dr. Bevacqua examined him on April 26, 1996. Richardson further claims that before he was incarcerated, he was able to control his glaucoma with medication, and, as a result, he had minimal sight in his left eye. He contends that his condition has become more difficult to control due to the 51 day delay in treating his glaucoma and that he suffers from permanent massive tissue damage.

On April 2, 1999, the plaintiff commenced this action seeking monetary damages pursuant to 28 U.S.C. § 1983, alleging that the defendants violated the Eighth and Fourteenth Amendment for inadequate medical care on the ground that his glaucoma was left untreated for a period of 51 days. The plaintiff claims that although Nurse Ferguson, Dr. Kashimawo, and Dr. John Doe had knowledge of his medical condition, they failed to treat his glaucoma. The plaintiff further claims that, as warden of NCCC, Sheriff Jablonsky acted with deliberate indifference by failing to remedy a pattern and policy of "deliberate indifference concerning inadequate medical care for well over 10 years. . . ."

Defendants Nassau County, Sheriff Jablonsky, and Nurse Ferguson now move for summary judgment. These defendants contend that in a separate action against Nassau County commenced in September 1986 in the Supreme Court, Nassau County, Index 8423/86, Richardson claimed that, during the course of incarceration at the NCCC in 1985 and 1986, the County failed to administer his glaucoma medications for several months. In that action, the plaintiff claimed that as a result of the County's inaction, he lost the vision in his left eye. In September of 1995, that action was settled by payment of $95,000 by the County to the plaintiff.

Annexed to the defendants' motion papers is a copy of the plaintiff's testimony at the State Supreme Court trial, in which plaintiff testified that the sight in his left eye was "completely gone." In addition, the defendants annex a copy of records from the NCMC from March of 1992, which indicate that Richardson has no light perception ("NLP") in his left eye at that time. In connection with the previous lawsuit, an opthalmologist, Dr. William Kasper, examined Richardson and concluded that he was blind in his left eye. In an affirmation dated November 7, 2002, Dr. Kasper states that "it doesn't seem possible" that sight could return to Richardson's left eye. Thus, Nassau County asserts that summary judgment is warranted in that the plaintiff has failed to establish a policy or custom by Nassau County that caused his alleged injuries. In addition, Sheriff Jablonsky alleges that there is neither proof of personal participation nor proof that he acted as a "policymaker" in this regard.

Although the docket history shows that Dr. Kashimawo and Dr. John Doe (Dr. Furbert) were served with a summons and complaint on February 2, 2002, to date, these defendants have not filed an appearance in this action. The Court notes that defendant Dr. John Doe and the name "Dr. Furbert" are used interchangeably in the parties' papers.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there is are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

In making this determination, the Court is mindful that Richardson's *pro se* status means that his submissions should be held " 'to less stringent standards that formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court recog-

nizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *See Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth,* 710 F.2d at 95 (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)).

**B. Inadequate Medical Care**

■ While the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical care by the state. *See Bewry v. Hopkins,* 125 F.3d 843No. 96–2829, 1997 WL 589683, at *1 (2d Cir.1997); *McKenna v. Wright,* No. 01 Civ. 6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002). The plaintiff asserts a Section 1983 cause of action for inadequate care under both the Eighth and Fourteenth Amendments. Because the plaintiff specifically states in his complaint and opposition papers that he was a pretrial detainee at all relevant times, he cannot assert an action for cruel and unusual punishment under the Eighth Amendment. The Court also notes that the defendants' papers focus only on the plaintiff's Eighth Amendment claim. Nevertheless, regardless of the academic distinction between the Eighth and Fourteenth Amendments, "the standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard." *Bourdon v. Roney,* No. 99 Civ. 0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar. 6, 2003) (citing *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996)).

■ To establish a Fourteenth Amendment violation for inadequate medical care, a pretrial detainee must demonstrate that the defendant "denied him treatment necessary to remedy a serious medical condition and [sic] did so because of deliberate indifference" to that need. *Bewry v. Hopkins,* 125 F.3d 843, 1997 WL 589683, at *1; *see Boomer v. Lanigan,* No. 00 Civ. 5540, 2002 WL 31413804, at *6 (S.D.N.Y. Oct. 25, 2002). Under this requirement, the plaintiff must show that, objectively, the medical condition was serious and that, subjectively, the defendant acted with deliberate indifference to his medical needs. *See Brock v. Wright,* 315 F.3d 158, 162 (2d Cir.2003) (citations omitted).

**1. Serious Medical Condition**

■ "A condition is 'sufficiently serious' if it is 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Flemming v. Velardi,* No. 02 Civ. 4113, 2003 WL 21756108, at *2 (S.D.N.Y. July 29, 2003) (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir. 1994)). "Courts consider evidence of a diagnosable eye condition to be significant in determining whether a plaintiff has alleged a serious medical condition." *Flores v. New York City Health and Hospitals Corp.,* No. 02 Civ. 6058, 2003 WL 21709512, at *3 (S.D.N.Y. July 21, 2003) (citation omitted). Other significant factors examined by the courts include "the severity of the injury, the effect of the injury had on the plaintiff's daily activities, and the resulting pain are other significant factors." *Id.*

■ In this case, the defendants argue that the plaintiff's allegation that he lost the remaining vision in his left eye is in-

consistent with the plaintiff's prior sworn testimony and medical records which indicate that he had no vision in 1989 and suffered from NLP in 1993. Furthermore, the defendants contend that a November 7, 2002 letter by one Dr. William Kasper states that "it does not seem possible" that sight could have returned to Richardson's eye based on a review of a report dated December 11, 1989 which indicated that the plaintiff had NLP in his left eye.

In response, Richardson contends that absent optic nerve damage or massive tissue damage, NLP is not the medical equivalent of being legally blind. The plaintiff also argues that his sight was minimally returned due to his medication and that the defendants' failure to adequately treat his existing glaucoma condition resulted in optic nerve damage which made the NLP permanent, rendering him legally blind in his left eye. Moreover, the plaintiff annexes to his papers Dr. Alejandro Bevacqua's April 26, 1999 diagnosis that "IOP [intraocular pressure] very high" which, according to the plaintiff, indicates that his condition was aggravated due to the delay in treatment.

The Second Circuit has found deliberate indifference as a result of a medical official's failure to treat an eye condition. *See, e.g., Harris v. Greifinger,* No. 97–2687, 1998 U.S.App. LEXIS 35296, at *7 (2d Cir. Feb. 8, 1998) (holding that the plaintiff sufficiently claimed a violation of an Eighth Amendment violation based on deliberate indifference because the medical official's inaction to treat an inmate's severe migraine headaches and vision loss resulted in complete blindness); *Koehl v. Dalsheim,* 85 F.3d 86, 87 (2d Cir.1996) (finding deliberate indifference to a serious medical condition where an inmate was deprived of glasses prescribed by the inmate's doctor because visual deficiencies can subject the inmate to injuries); *Todaro v. Ward,* 565 F.2d 48 (2d Cir.1977) (finding that medical conditions such as glaucoma and eye infections constitute serious ailments).

Further, the Court notes that a plaintiff alleging medical indifference in an a Section 1983 action is not required to produce "expert medical testimony," *Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994), and that a *pro se* litigant is entitled to a certain degree of leeway. As such, while the Court takes no position on whether the plaintiff is likely to prevail on the ultimate merits of his cause of action, a reasonable jury could find that his existing glaucoma was a serious medical condition that, when left untreated, could cause permanent damage to the plaintiff's eye. Therefore, the Court finds that the plaintiff sufficiently raises a genuine material factual issue that a reasonable fact-finder could determine was a serious medical condition.

**2. Deliberate Indifference**

***a. Nurse Terry Ferguson***

Having concluded that summary judgment may not be granted on the ground that Richardson's eye condition is not sufficiently serious, the Court next examines whether the defendants acted with deliberate indifference to the plaintiff's medical needs. This subjective element requires the plaintiff to demonstrate that the official acted with "a sufficiently culpable state of mind, which must be 'the equivalent of criminal recklessness,' namely, when the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Boomer,* 2002 WL 31413804, at *6 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). Allegations of mere negligence or medical malpractice are insufficient to establish deliberate indifference. *See Smith v. Nurse Carpenter,* 316 F.3d 178, 184 (2d Cir.2003); *Patterson*

*v. Lilley,* No. 02 Civ. 6056, 2003 WL 21507345, at *5 (S.D.N.Y. June 30, 2003).

■ A prison official's intentional denial or delay in accessing medical care may evidence deliberate indifference. *Nelson v. Rodas,* No. 01 Civ. 7887, 2002 WL 31075804, at *12 (S.D.N.Y. Sept. 17, 2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). However, an "inadvertent failure to provide adequate medical care" is not tantamount to deliberate indifference. *Id.*

■ Upon the plaintiff's arrival at the Nassau County Correction Facility on March 6, 1996, the plaintiff informed Nurse Ferguson, the intake examining nurse, that he had an existing glaucoma condition and that he was on specific medications to treat and control the condition. Annexed to the plaintiff's papers is a copy of a medical intake chart signed by Nurse Ferguson on March 6, 1996, noting his eye condition and medication. In an undated affidavit, Nurse Ferguson states that she does not recall meeting the plaintiff, but concedes that the medical intake chart supports that the plaintiff informed her that he had glaucoma in his left eye and that he was taking the medication "Propene, Pylocarpine 4% and Timoptic." However, Ferguson states that, as a registered nurse at the NCCC, she was not authorized to prescribe medication or permitted to administer prescription medication without a doctor's order. Nor was she permitted to request doctor consultations at the Nassau County Medical Center without a doctor's order. Ferguson states that she does not recall seeing the plaintiff after March 6, 1999.

In the Court's view, although the record establishes that Ferguson had knowledge of the glaucoma, the plaintiff has not alleged any specific conduct by Ferguson tending to establish that she acted with "conscious disregard of a substantial risk of serious harm" towards the plaintiff. *Cuoco v. Moritsugu,* 222 F.3d 99, 107 (2d Cir.2000). The allegations that Richardson informed Nurse Ferguson that he had glaucoma and that she noted his condition on the medical intake chart are not sufficient to show that she acted with the requisite mental state of criminal recklessness. Moreover, the plaintiff does not allege or set forth any evidence showing that Nurse Ferguson's inaction contributed to the delay in treating his glaucoma or that she refused to treat the plaintiff in any way. Nor does the plaintiff allege that Ferguson was responsible for treating his condition or prescribing his medication. Indeed, the record shows that Nurse Ferguson's only contact with the plaintiff was on March 6, 1999 when she met with him on the first day of his pre-trial incarceration to obtain his medical history. Accordingly, the Court finds that there is no genuine issue of material fact with respect to Ferguson's alleged deliberate indifference to the plaintiff's medical needs. Thus, the Court grants summary judgment dismissing the complaint as to Nurse Ferguson.

***b. Sheriff Joseph Jablonsky***

■ In the plaintiff's memorandum in opposition, he states that "Sheriff Joseph Jablonsky is not immune as governing official and has personal involvement by failing to rectify an ongoing 'pattern and policy' of constitutional deprivations at the NCCC since pre 1996." It is unclear whether Richardson is suing Sheriff Jablonsky in his official or personal capacity. To the extent that the plaintiff is attempting to attach personal liability to Sheriff Jablonsky based on his position as warden of the NCCC, the Court finds that the plaintiff's allegations are insufficient as a matter of law. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) (holding that

mere "linkage in the prison chain of command will not suffice to establish personal involvement").

To recover damages in a Section 1983 claim, a plaintiff must demonstrate that the defendant was personally involved in the alleged wrongdoing. *See Patterson v. Lilley,* No. 02 Civ. 6056, , 2003 WL 21507345, at *6 (S.D.N.Y. June 30, 2003). "Personal involvement of a supervisory official within the meaning of § 1983 may be established through: (1) direct participation in a constitutional wrong; (2) failure to remedy a known wrong; (3) creation of an unconstitutional practice or custom; or (4) gross negligence in managing subordinates who have caused the violation." *Id.* at *6–7 (citing *Williams v. Smith,* 781 F.2d 319, 324–24 (2d Cir.1986)). The plaintiff has failed to set forth any allegations or evidence establishing that Sheriff Jablonsky had any personal involvement in delaying his treatment or that he even knew that Richardson's treatment was delayed. Nor has the plaintiff established that Sheriff Jablonsky was grossly negligent in managing his subordinates. Furthermore, to the extent that the plaintiff is suing Sheriff Jablonsky for monetary damages in his official capacity, the plaintiff's claims are barred by the Eleventh Amendment. *See Davis v. State of New York,* 316 F.3d 93, 101 (2d Cir. 2002) (citing *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Accordingly, the motion for summary judgment with respect to Sheriff Jablonsky is granted.

### C. Municipal Liability under Section 1983

The defendants also argue that the plaintiff fails to state a claim for municipal liability against Nassau County. Municipal liability under Section 1983 cannot be based on a theory of *respondeat superior. See Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 404–05, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Jeffes v. Barnes,* 208 F.3d 49, 56–57 (2d Cir.2000); *DeCarlo,* 141 F.3d at 61. Rather, the plaintiff must show that the constitutional violation by a municipal employee resulted from a custom, policy, or practice of the municipality. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *DeCarlo v. Fry,* 141 F.3d at 61; *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995).

" 'The mere assertion [sic] that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Snall v. City of New York,* 242 F.3d 367, 2000 WL 1847664, at *4 (2d Cir.2000) (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)); *see also Batista,* 702 F.2d at 397. The plaintiff must produce " 'some evidence that policymakers were aware of a pattern of [unconstitutional conduct] but failed to [respond].' " *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 478 (E.D.N.Y.2002) (quoting *Walker v. City of New York,* 974 F.2d 293, 300 (2d Cir.1992)). In addition, an official policy, practice or custom cannot be inferred from a single incident alleged in a complaint against a municipal employee not vested with policy-making authority. *See Dwares,* 985 F.2d at 100. Here, the plaintiff annexes an article, dated November 12, 2000, which reports certain government findings regarding the county jail in Nassau County. This article alone, which is one paragraph in length and is unrelated to the facts in this case, is insufficient to establish a custom or policy. Indeed, the record is devoid of any evidence of a custom or policy establishing that Nassau

County was responsible for the alleged deprivation of his constitutional rights. Accordingly, summary judgment is granted dismissing the complaint against Nassau County.

### D. Dr. Kashimawo and Dr. Furbert

A review of the docket sheet reveals that the U.S. Marshall Service served a summons and an amended complaint on Dr. Kashimawo and Dr. John Doe (Dr. Furbert) by leaving the summons and complaint at the Legal Department of the Nassau County Correctional Facility on February 2, 2002. These defendants have yet to file an answer. Since February 2, 2002, the plaintiff has taken no steps to advance the litigation against these remaining defendants. The plaintiff is directed to inform the Court, within thirty days of the date of this order, whether a default should be entered against Dr. Kashimawo and Dr. Furbert. Failure to respond within the thirty days will result in a dismissal with prejudice against these defendants.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion for summary judgment dismissing the complaint is **GRANTED** with respect to Nassau County, Sheriff Jablonsky, and Nurse Ferguson; and it is further

**ORDERED**, that the plaintiff is directed to inform the Court, within thirty days of the date of this order, whether a default should be entered against Dr. Kashimawo and Dr. Furbert; and it is further

**ORDERED**, that if the plaintiff does not respond within the time prescribed above, the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

DONALD M. RICHARDSON, Plaintiff,

—against—

DR. KASHIMAWO and DR. JOHN DOE (DR. FURBERT), Defendants.

99 CV 2051 (ADS)(ETB)

**SO ORDERED.**