**Fred TRAGUTH and Otto Handtke, individually and doing business as Dance Motion Press, Plaintiffs-Appellees,**

**v.**

**D'Lela ZUCK, Defendant-Appellant.**

**No. 15, Dockets 82–7148, 82–7850.**

United States Court of Appeals, Second Circuit.

Argued March 18, 1983.

Decided June 17, 1983.

D'Lela Zuck, pro se.

Henry O. Leichter, New York City (Susan M. Erda, Erda & Leichter, New York City, of counsel), for plaintiffs-appellees.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a default judgment entered against a *pro se* defendant in the United States District Court for the Southern District of New York, Carter, *J.* Judgment was entered against D'Lela Zuck after she failed to file a timely answer or to obtain counsel within the time allotted her by the court for that purpose. For the reasons set forth below, we reverse and remand the case for further proceedings on the merits.

I

This case arises from a dispute between Fred Traguth and Otto Handtke, author and illustrator respectively, of the book *Modern Jazz Dance,* and D'Lela Zuck, erstwhile American distributor of the book. Traguth and Handtke are West German citizens who live in West Germany and occasionally travel to the United States on business. Under the name of Dance Motion Press, they published the book in a German language edition in 1976 and in an English language edition in 1978. In 1979 they hired Zuck to act as agent for Dance Motion Press in the United States and Canada, and

to promote and distribute the American edition of the book.

Disagreements apparently arose over the scope of Zuck's authority and the compensation to which she was entitled, and on September 11, 1981 Traguth and Handtke filed the instant diversity action in conversion. Their complaint alleged that Zuck had failed to account to them for her receipts from sales of the book, that she had paid them only $6,000 of the proceeds, that she had refused to return to them the book production materials and unsold copies and that she had asserted exclusive publication rights to the book, hampering their efforts to publish a second American edition. On September 17, 1981 plaintiffs moved for a preliminary injunction to restrain Zuck from disposing of the unsold copies and the production materials.

On October 9, 1981 Zuck wrote to the district judge to request an extension of time to answer the complaint and assistance in securing counsel. She explained her view of the dispute, described her efforts to obtain an extension from Henry Leichter, plaintiffs' counsel, and expressed her willingness "to come to court and cooperate in order to resolve the matter." On October 22, 1981 a conference was held in chambers with Zuck and Leichter present. In a conversation following the conference, Zuck rejected a settlement proposed by Leichter and offered a counterproposal. Leichter later telexed Zuck's offer to the plaintiffs in Germany. On October 26 Zuck wrote to the court to report that while no agreement had been reached, she remained hopeful that they would settle. She added that, on the court's recommendation, she was continuing to seek counsel. That same day, Leichter wrote to the court to say that plaintiffs had telexed their rejection of Zuck's offer the day before and that a settlement appeared unlikely.

On November 9, 1981, in response to the October 26 letters, the judge wrote Zuck and Leichter a letter which included the following:

> Since Ms. Zuck does need legal representation, I am willing to give her until December 1, 1981, to secure counsel. If on or before December 1, counsel does not put in an appearance on Ms. Zuck's behalf, Mr. Leichter may renew his motion for default judgment.

Counsel never appeared for Zuck. On November 28, however, Zuck filed an answer in which she denied the bulk of plaintiffs' allegations and asserted, as an affirmative defense, lack of subject matter jurisdiction for failure to meet the jurisdictional amount in controversy. On December 2 Leichter wrote to the court, acknowledging receipt of Zuck's answer on December 1, but arguing that Zuck had failed to comply with the November 9 directive by answering *pro se* instead of retaining counsel. In a letter to the court dated December 9, Zuck responded to Leichter's letter and requested that the court entertain her motion to dismiss for lack of jurisdiction. That motion was received in the Southern District *pro se* office December 9, filed December 10, and received in Judge Carter's chambers December 11.

In an endorsement order dated December 10, 1981 and filed December 11, the court agreed with Leichter:

> The November 9 extension was quite specific. It gave defendant additional time to secure counsel. It did not extend time to answer *pro se* after the initial failure to make a timely response to the complaint. The court was of the view that Ms. Zuck's interest could best be protected if she employed counsel. That was the only justification for not acting on plaintiffs' motion for default. Although the court desires defendant to proceed with professional help, it cannot be overlooked that plaintiffs' rights have a claim on the court's attention. Accordingly, since defendant has failed or refused to use the time between November 9, 1981, and December 1, 1981, to secure counsel, plaintiffs may renew the motion for default judgment.

On December 14, 1981 Zuck responded to the order with dismay, offering the following explanation:

There was no intent at any time to over-look Your Honor's order, and I have put a great deal of time and effort in my continuous attempts to secure counsel. However nothing was available unless I could provide the financial backing which I lack. Unless the court decides that I should sacrifice my livelihood for that cause, there is no means available for me to secure counsel, and as I am already in debt I have no way of persuing [sic] this possibility.

For the reasons mentioned above, I have taken the only way left, believing that it was my right to defend myself. In my attempts to find legal knowledge I have frequented the Library of the Bar Association and came upon a quotation which I believed was supportive of my action.

Zuck proceeded to quote 28 U.S.C. § 1654 (1976), which provides the right to self-representation in the federal courts and requested that the court "consider my unknowledgeable position." On December 21 Zuck sent the court a notarized letter describing her attempts to obtain counsel and stating that she had been unable to do so.

Plaintiffs renewed their motion for default judgment on December 15, 1981. On January 14, 1982 Zuck requested an extension of the return date on the motion. On January 22, 1982 the court granted plaintiffs' motion, entered judgment in an amount later determined to be $75,407.05 and enjoined Zuck from moving or transferring the book production materials and the unsold copies of the book. The court also ordered Zuck to account to plaintiffs for all proceeds of sales of the book and referred the case to Magistrate Kent Sinclair "to conduct such accounting and to determine the amount of damages sustained by plaintiffs, if necessary."

On January 25, 1982 Zuck filed a motion for leave to file her answer out of time, which was denied on February 5. On February 10 Zuck wrote to the court to point out that it had never ruled on her motion to dismiss. That same day she filed a notice of appeal.

We denied plaintiffs' motion to dismiss the appeal for lack of a final judgment holding that the district court's order granting injunctive relief was appealable. We revested the district court with sufficient jurisdiction to complete the accounting and stayed the appeal until the accounting was completed and a supplemental judgment was filed.

On June 15, 1982 Magistrate Sinclair held a hearing on the issue of damages at which Zuck and Leichter were present and on September 1 he issued his findings and conclusions. On September 10 Zuck filed an objection to the magistrate's report. The court adopted the report on October 6 and a judgment for $75,407.05 in damages was filed on October 12. On November 4 Zuck filed a notice of appeal.

## II

The district court's entry of default judgment was improper for two reasons. First, Zuck's answer was timely filed under the court's November 9 directive extending her time to respond until December 1. Second, even if the answer was untimely, the court abused its discretion in disregarding Zuck's motion to set aside the finding of default. These issues are addressed seriatim.

### A. *Timeliness of the Answer*

In its letter directive of November 9, 1981 the court allowed Zuck an extension of time until December 1 to secure counsel for purposes of responding to the complaint. In effect, the November 9 directive was an extension of time to answer under Rule 6(b)(2) of the Federal Rules of Civil Procedure on the condition that Zuck answer through counsel rather than *pro se*. That condition, however, improperly denied Zuck's statutory right to self-representation and was thus unenforceable by a finding of default after an answer was filed within the extension period.

Rule 6(b)(2) provides that when "an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion upon motion made after the expiration of the speci-

fied period permit the act to be done where the failure to act was the result of excusable neglect." Since the complaint was served on September 15, Zuck had until October 5 to file a timely answer. *See* Fed.R.Civ.P. 12(a). By her letter of October 9, in which she stated her willingness to go to court to resolve the dispute and asked for an extension of time, Zuck moved for an extension of time to file her answer. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d 987, 989–90 (2d Cir.1982) (*pro se* papers should be read liberally). Thus, the court, within its discretion, granted Zuck leave to respond to the complaint (albeit through counsel) on or before December 1.

Rule 6(b) does not, however, vest a court with discretion to impose a special condition on the responding party which violates a statutory right. Under 28 U.S.C. § 1654 (1976), a party to a civil action in federal court has the right to appear *pro se.*[1] The right to self-representation "is a right of high standing, not simply a practice to be honored or dishonored by a court depending on its assessment of the desiderata of a particular case." *O'Reilly v. New York Times Co.,* 692 F.2d 863, 867 (2d Cir.1982). While the right may be limited under certain circumstances, *see id.* at 867–69, none of those circumstances was present in this case. The condition that Zuck appear through counsel was clearly impermissible. Since Zuck filed and served her answer within the period allowed by the district court, the court's December 10 finding of default was based solely on the fact that she answered *pro se.* The subsequent grant of plaintiffs' motion for default judgment must therefore be reversed.

B. *Motion to Set Aside the Finding of Default*

By her letter of December 14, Zuck sought to set aside the December 10 finding of default. *See Haines v. Kerner,* 404 U.S. at 520, 92 S.Ct. at 595; *Moorish Science Temple of America, Inc. v. Smith,* 693 F.2d at 989–90. While a default was never entered on the district court docket sheet, *see* Fed.R.Civ.P. 55(a), the court's December 10 order was functionally equivalent to an entry of default, *cf. Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir.1981), and Zuck's request should therefore have been considered as a motion to set aside an entry of default under Rule 55(c) of the Federal Rules of Civil Procedure, *see id.* at 276–77. Rule 55(c) permits a party to be relieved of default "[f]or good cause shown." Whether good cause is deemed to have been shown depends on three considerations: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Id.* at 277. The decision is committed to the discretion of the district court, *Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 373 (D.C.Cir.1980), but "[a]n abuse of discretion need not be glaring to justify reversal," *id.* at 373–74. The narrow scope of the district court's discretion stems from "strong policies favoring the resolution of genuine disputes on their merits," *Jackson v. Beech,* 636 F.2d 831, 835 (D.C. Cir.1980), and for the same reasons, "doubts are to be resolved in favor of a trial on the merits," *Meehan v. Snow,* 652 F.2d at 277.

The district court did not make the required inquiries because it did not rule on Zuck's motion. It is clear from the record, however, that the motion could not properly have been denied. As in *Meehan,* there were no grounds for finding that Zuck's default was willful and plaintiffs neither alleged nor proved prejudice. It appears that Zuck presented meritorious defenses to most of the counts alleged in the complaint.[2] Since Zuck satisfied the require-

1. 28 U.S.C. § 1654 (1976) provides as follows:
   In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

2. As to the alleged conversion of the production materials, testimony of a plaintiff's witness at a hearing held in March 1982 by Magistrate Sinclair established that the printer had shipped the materials to Germany and that Zuck never had possession of them. Hearing

ments of Rule 55(c), the court's failure to set aside the finding of default was an abuse of discretion.[3]

The district court also abused its discretion in failing to take into account Zuck's *pro se* status. Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training. While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981), it should not be impaired by harsh application of technical rules. Trial courts have been directed to read *pro se* papers liberally, *Haines v. Kerner,* 404 U.S. at 520, 92 S.Ct. at 595, and to allow amendment of *pro se* complaints "fairly freely," *Holmes v. Goldin,* 615 F.2d 83, 85 (2d Cir.1980).

The court's duty is even broader in the case of a *pro se* defendant who finds herself in court against her will with little time to learn the intricacies of civil procedure. Zuck had no reason to know, upon service of the complaint, that she faced default if she did not answer within twenty days. She searched in good faith for a lawyer to represent her and, failing in that, she responded within that period diligently, if unskillfully, to every pronouncement of the court.

The judgment of the district court is reversed and the cause remanded for further proceedings on the merits. If Zuck is ultimately found liable and continues to represent herself through the inquiry into damages, the district court may proceed on the record developed in the hearings on damages held before Magistrate Sinclair, without prejudice to the parties' right to offer additional evidence pertaining to damages.

Tr. at 13–19; *see* Magistrate's Findings and Conclusions at 10 n. 11 ("Liability for this material was determined by default, although the hearing evidence suggested a lack of liability."). In her letter of October 9, 1981 Zuck alleged that she had not been compensated for her services or reimbursed for her expenses as was previously agreed to by plaintiffs, so part of the allegedly converted proceeds from sales of the book may have been hers, depending on the agreed-upon payment procedure. She also asserted that she held the unsold books "in lieu of payment." Depending on her ultimate intentions, she may have had a good-faith defense to the claim of conversion of the books. *See* 23 N.Y.Jur.2d *Conversion* § 56 (1982).

3. Compare *Martin v. Fesson,* 80 Civ. 42, slip op. (S.D.N.Y. Dec. 30, 1982), in which the court denied defendant's motion to set aside an entry of default upon finding, after a careful review of defendant's conduct over the course of the proceedings, that the default was willful and that defendant had no meritorious defenses. Two months had passed between service of the complaint and entry of default judgment, during which defendant's lawyer called plaintiffs' lawyer twice to inquire about the substance of the action without entering a notice of appearance, filing responsive papers, or appearing at a scheduled pretrial conference. *Id.* at 3–4. Defendant finally appeared after a final judgment was filed, about fourteen months after service of the complaint.