**Martin A. LEHMAN, Plaintiff,**

v.

**DISCOVERY COMMUNICATIONS, INC., The Learning Channel, Barbara Kornblau, individually and in her official capacity as an Assistant District Attorney of Nassau County, and the County Of Nassau, Defendants.**

**No. 01 CV 4211(ADS)(WDW).**

United States District Court,
E.D. New York.

Aug. 22, 2002.

Martin A. Lehman, West Hempstead, NY, pro se.

Ohrenstein & Brown, LLP, New York City by Steven Rosenfeld, of counsel, for Discovery Communications, Inc., Learning Channel One Penn Plaza.

Carole A. Burns & Associates, Mineola, NY by Alan J. Reardon, of counsel, for Barbara Kornblau, County of Nassau.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of claims by Martin A. Lehman ("Lehman" or the "plaintiff")

that the Learning Channel ("Learning Channel" or a "defendant"), Discovery Communications, Inc. ("Discovery" or a "defendant"), Assistant District Attorney Barbara Kornblau ("Kornblau" or a "defendant"), and the County of Nassau ("Nassau County" or a defendant) (collectively, the "defendants") made libelous or slanderous statements in violation of 28 U.S.C. § 1337 and deprived him of his "good name and reputation" in violation of 42 U.S.C. § 1983 ("Section 1983"). Presently before the Court is a motion by Kornblau and Nassau County (the "County defendants") to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") on the ground that the Court lacks subject matter jurisdiction over the action.

## I. *BACKGROUND*

The following facts are taken from the complaint. On·May 21, 1997, the plaintiff, an orthopaedic surgeon who is now retired, was arrested and charged with insurance fraud. The Nassau County District Attorney's Office prosecuted the plaintiff, and on March 3, 1999, following a jury trial, he was acquitted of all charges.

On May 24, 2001, at 9:00 p.m., the Learning Channel, "a channel of . . . Discovery Communications, Inc." (complaint ¶ 13) broadcast a television program entitled, "World's Most Outstanding Undercover Stings". Kornblau appeared on the program and described "Operation Backbone," the sting operation that resulted in the plaintiff's arrest. In particular, Kornblau explained that she was one of the supervisors of the operation, which targeted professionals who had allegedly provided false information to insurance companies or had submitted false insurance claims. Kornblau also said that personnel involved in Operation Backbone videotaped doctors performing examinations of pa-

tients, and the prosecutors used the videotapes extensively during their grand jury presentations. In the televised interview, Kornblau opined that the videotapes led many defendants to enter guilty pleas.

At one point during the television program, several clips from the videotapes were shown while Kornblau or a narrator spoke in the background. In one clip, the plaintiff is shown examining a patient during a follow-up visit. According to Lehman, the clip from the videotape also shows him taking x-rays of the patient, performing range-of-motion tests, and discussing a diagnosis and treatment plan with the patient. While this clip is being shown, the narrator states, "Twelve undercover agents found corruption on every level from doctors willing to spend only seconds examining a phoney patient" (complaint ¶ 23).

Further, while the plaintiff appears in another videotape clip, the narrator states, "With enough evidence in their possession, twenty professionals involved in billing more than two million dollars in false claims are brought to justice" (complaint 25).

The third clip consists of pictures of three health care providers. Two of the people displayed had been convicted of insurance fraud, while the third person was the plaintiff who had been acquitted of such charges. While these three pictures were shown, the following comments were made: "Operation Backbone is a success but the fight to elim[i]ante false insurance claims continue[s.][F]or anyone tempted to try this get rich quickly scheme[, l]isten to Ted Kerner, 'Be careful when you consider faking an insurance claim. In the modern era, we are going to find out, and a felony conviction as an adult changes the expectation of the rest of your adult life'" (complaint ¶ 26).

Lehman claims that the comments made by Kornblau and the narrator were false because he had been acquitted of all criminal charges brought against him. The complaint alleges that at the time Kornblau made her comments for the television program, she knew that Lehman had been acquitted. The complaint further alleges that because the ultimate disposition of the charges against Lehman were public knowledge, the Learning Channel and Discovery willfully disregarded the truth or failed to take the most elementary steps to ascertain the true facts. Accordingly, Lehman contends that these statements were made willfully, maliciously, and with a reckless disregard for the truth. The complaint alleges that, therefore, the comments by Kornblau and the narrator of the program constitute libel and slander. In addition, Lehman asserts that the program and its broadcast caused damage to the plaintiff's good name and reputation and caused him to suffer emotional distress.

The complaint raises two causes of action. The first cause of action alleges that the conduct of the defendants constitutes common law libel and slander, which allegedly violates 28 U.S.C. § 1337. The second cause of action alleges that the plaintiff was deprived of his good name and reputation without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

## II. *DISCUSSION*

The County defendants move to dismiss the complaint on the ground that the Court lacks federal subject matter jurisdiction over the action. They argue that 28 U.S.C. § 1337 does not provide litigants with a cause of action but, rather, provides federal subject matter jurisdiction in certain cases. In addition, the County defendants contend that harm to one's reputa-

tion does not give rise to a cause of action under Section 1983.

### A. The Standard

When considering a motion to dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Rep. of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir.1976). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. *See Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *See Kamen v. AT&T,* 791 F.2d 1006, 1011 (2d Cir.1986).

In addition, the Court is mindful that Lehman's *pro se* status means that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Fleming v. United States,* 146 F.3d 88, 90 (2d Cir.1998) (citations omitted). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *See Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally

and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Traguth,* 710 F.2d at 95 (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)).

## B. Subject Matter Jurisdiction

■ Federal subject matter jurisdiction exists when a federal question is presented to the Court, *see* 28 U.S.C. § 1331, or the plaintiff and all of the defendants are citizens of different states and the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332. Where subject matter jurisdiction is lacking, the district court must dismiss the complaint without regard to the merits of the lawsuit. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996). Lehman asserts that federal subject matter jurisdiction is predicated upon diversity and federal question jurisdiction, and the Court will address each basis for jurisdiction in turn.

### 1. Diversity Jurisdiction

■ Diversity jurisdiction exists where there is a suit between citizens of different states, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Advani Enters., Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 160 (2d Cir.1998). For a district court to have diversity jurisdiction, there must be complete diversity of citizenship, *see Advani,* 140 F.3d at 160, which means that no plaintiff is a citizen of the same state as any defendant. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2d Cir.1990); *see also Herrick Co., Inc. v. SCS Communications, Inc.,* 251 F.3d 315, 322 (2d Cir.

2001) (finding it axiomatic that "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships"). Here, Lehman is a citizen of New York. Although the Learning Channel and Discovery are alleged to be citizens of Maryland, Kornblau and the County of Nassau are citizens of New York. Accordingly, complete diversity of citizenship does not exist, and this Court does not have subject matter jurisdiction based on diversity.

### 2. Federal Question Jurisdiction

■ Federal question jurisdiction exists when an action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Second Circuit has held that, in determining whether federal question jurisdiction exists, the Court should not consider whether the plaintiff could recover on his claims. *See Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990) (citations omitted). "Instead, the test is whether 'the cause of action is so patently without merit as to justify . . . the court's dismissal for want of jurisdiction.'" *Id.* (quoting *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974)). Consequently, a federal question claim should only be dismissed for lack of subject matter jurisdiction if it is " 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)). Further, a court properly assumes subject matter jurisdiction over a lawsuit if the federal claim is colorable. *See Savoie v. Merchants Bank,* 84 F.3d 52, 57 (2d Cir.1996).

#### a. The First Cause of Action

■ Lehman's first cause of action alleges libel and slander against all of the

defendants and is brought pursuant to 28 U.S.C. § 1337. Section 1337 provides, in relevant part:

> (a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

This Section confers jurisdiction in particular cases but does not in and of itself create a federal cause of action. *See Colorado Labor Council, AFL–CIO v. American Federal of Labor and Congress of Indus. Organizations,* 481 F.2d 396, 400 (10th Cir.1973); *B.F. Goodrich Co. v. Northwest Indus.,* 424 F.2d 1349 (3d Cir. 1970); *see also IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1015 (2d Cir.1975) (stating that Section 1337 confers jurisdiction "over actions arising under an Act of Congress regulating trade and commerce against restraint and monopolies" when "the Act of Congress does not have its own jurisdiction conferring provision"). As such, Lehman does not allege an action "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 by asserting that the defendants violated 28 U.S.C. § 1337.

▇▇ Moreover, the complaint does not satisfy the requirements of Section 1337 so that the Court could acquire jurisdiction pursuant to that statute. To invoke federal jurisdiction under Section 1337, a complaint must state a claim arising under a federal act regulating commerce. *See Carlson v. Coca–Cola Co.,* 483 F.2d 279–280 (9th Cir.1973); *see also Vencap,* 519 F.2d at 1015; *Zimmerman v. Conrail,* 550 F.Supp. 84, 85–86 (S.D.N.Y.1982) (holding that § 1337(a) does not confer federal subject matter jurisdiction when the federal statute regulating commerce is only tangentially related to the cause of action, *i.e.,* it governs the defendant's day-to-day oper-

ations but does not provide the basis for the cause of action). However, here, Lehman does not mention a federal act regulating commerce in connection with his first cause of action. Nor does the complaint artfully plead what is actually a claim arising under a federal act regulating commerce. *See Davis v. North American Van Lines,* 934 F.Supp. 245, 248 (S.D.Tex.1996) (holding that a claim may arise under a federal act regulating commerce even if that act is not specifically mentioned in the complaint). *Cf. Russo v. Kirby,* 453 F.2d 548, 551 (2d Cir.1971) ("Jurisdiction under § 1337 does not attach on the bare assertion that a right under an act regulating commerce is infringed. Facts must be alleged to show that federal law in the particular case creates a duty or remedy."). Rather, he alleges the common law torts of libel and slander. Moreover, even assuming that the operations of some of the defendants are governed by federal acts regulating commerce, that fact is insufficient to satisfy Section 1337. *See Zimmerman,* 550 F.Supp. at 85–86. Accordingly, Section 1337 cannot provide this Court with federal subject matter jurisdiction over Lehman's action.

In sum, the Court grants the motion by the County defendants to dismiss the first cause of action as against them on the ground that the Court lacks subject matter jurisdiction over the claim.

### b. The Second Cause of Action

▇▇ As a second cause of action, Lehman alleges that he "was subjected to loss of property, i.e. his good name and reputation in violation of 42 U.S.C. § 1983 and the [F]ourteenth [A]mendment to the Constitution" as a result of the defendants' conduct in producing and airing the television program "World's Most Outstanding Undercover Stings". It is well established that damage to one's reputation is not "by

itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *see Doe v. Dept. of Public Safety,* 271 F.3d 38, 47 (2d Cir.2001); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994). Rather, to sufficiently plead a Section 1983 claim for a violation of the Due Process Clause, a plaintiff who complains of governmental defamations must show "(1) the utterance of a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden or alteration of his or her status or of a right in addition to the stigmatizing statement." *Doe,* 271 F.3d at 47 (citing *Paul,* 424 U.S. at 701–02, 710–11, 96 S.Ct. 1155). Thus, where a plaintiff alleges damage to his reputation, "stigma plus" is required to establish a constitutional deprivation. *See Doe,* 271 F.3d at 47; *Valmonte,* 18 F.3d at 999.

 Here, Lehman's allegations do not rise to the level of a constitutional deprivation because he claims only that the defendant's conduct deprived him of his good name and reputation. The complaint does not refer to the termination of government employment or the deprivation of some other legal right or status. *See Paul,* 424 U.S. at 701, 96 S.Ct. at 1160. Although Lehman mentions the word "property," his examples of "property" include only his good name and reputation. Accordingly, the second cause of action fails to pass the "stigma plus" test. *See Paul,* 424 U.S. at 701–02, 710–11, 96 S.Ct. at 1160; *Doe,* 271 F.3d at 47, *Valmonte,* 18 F.3d at 999.

Moreover, the Court finds that Lehman's Section 1983 claim for the deprivation of due process based on his reputation is "so patently without merit as to justify ... the court's dismissal for want of juris-diction." *Operation Rescue,* 915 F.2d at 100. Indeed, the claim is foreclosed by the well-established rule set forth by the Supreme Court and reiterated by the Second Circuit, that reputation alone, "apart from some more tangible interests such as employment," is not "sufficient to invoke the procedural protection of the Due Process Clause." *Paul,* 424 U.S. at 701, 96 S.Ct. at 1161; *Doe,* 271 F.3d at 47; *Valmonte,* 18 F.3d at 999. Accordingly, Lehman's second cause of action does not set forth a colorable federal claim against the County defendants, and the Court grants the motion by the those defendants to dismiss that cause of action as against them on the ground that the Court lacks the subject matter jurisdiction necessary to entertain it.

## III. *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the motion by Kornblau and Nassau County to dismiss the complaint as against them pursuant to Rule 12(b)(1) of the Fed.R.Civ.P. is **GRANTED;** and the complaint is **DISMISSED** as against those defendant; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

and it is further

**ORDERED,** that the parties are directed to report to United States Magistrate Judge William D. Wall forthwith to set a schedule for discovery.

**SO ORDERED.**