Darcy MOORE, Plaintiff,

v.

**John E. POTTER, Postmaster General, United States Postal Service, Defendant.**

No. CV–00–7672 (ADS)(ARL).

United States District Court, E.D. New York.

Jan. 28, 2005.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On December 29, 2000, Darcy Moore ("Moore" or the "Plaintiff"), a former supervisor with the United States Postal Service (the "USPS"), commenced this action pursuant to Title VII of the Civil Rights Act of 1964 and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., against the Postmaster General of the USPS (the "Postal Service" or the "Defendant"). In January 2004, a trial was held on the claims brought pursuant to Title VII. Because the Plaintiff was not entitled to a trial by jury with respect to his claims brought pursuant to the FMLA, see *Mosley v. United States Postal Service*, 2002 U.S. Dist. LEXIS 4195, (S.D.N.Y. Jan. 10, 2002), the Court limited the issues to Plaintiff's Title VII claims. On January 21, 2004, the jury returned a verdict in favor of the Defendants with regard to the Plaintiff's Title VII claims.

Presently before the Court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") with regard to the Plaintiff's claim brought pursuant to the FMLA.

### I. BACKGROUND

With respect to his claim under the FMLA, the Plaintiff complaint states in its entirety "The U.S.P.S. violated rules and regulations governing F.M.L.A. The Agency has disciplined me for using F.M.L.A."

From the testimony and evidence presenting during the trial, it appears that the Plaintiff's FMLA claim arises from an incident on May 4, 2000, when the Plaintiff was charged as being absent without leave instead of being granted leave under the

Darcy Moore, Rockville Centre, NY, pro se plaintiff.

Roslyn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, by Kevin P. Mulry, Assistant United States Attorney.

FMLA. The undisputed facts are as follows:

At the time in question, the Plaintiff was a supervisor of distributions operations at the Western Nassau Processing and Distribution Center ("Western Nassau P & DC") in Garden City, New York. On May 4, 2000, the Plaintiff was charged as being absent without leave instead of being granted leave under the FMLA. The reason for the Plaintiff being charged as being absent without leave on that date is described in a "Proposed Letter of Warning in Lieu of Time–Off Suspension" dated May 17, 2000 and signed by Phyllis Alford, the Manager of Distribution Operations for the Western Nassau P & DC:

> On May 4, 2000, you were scheduled to report for duty at 1600 hours. You did not report for duty as scheduled. At approximately five minutes prior to your scheduled reporting time you called the Western Nassau [Processing and Distribution Center] and spoke to the Acting General Clerk. You advised the General Clerk that you were requesting sick leave. You stated to the General Clerk: "I am calling in sick leave, FMLA and I don't want to speak to Phyllis [Alford]." You are well aware of the fact that all Supervisors are required to speak to the Manager, Distribution Operations when calling in with leave requests. You have previously been instructed on the long term policy of the Western Nassau Facility. Because of your failure to follow instructions concerning leave requesting procedures your absence for May 4, 2000 has been charged to absent without leave.

On October 19, 2000, the Plaintiff also received a Merit Performance Evaluation which was also signed by Alford in which the Plaintiff's overall evaluation was "Unacceptable." The Plaintiff received the unacceptable evaluation for several reasons, including:

1. Failure to meet organizational goal. In October 1999, it was necessary to reassign your tour of duty to provide you with retraining and guidance in the function of your position.

2. Failure to dispatch all unit mail timely. While supervising the 030 Operation you failed to have all the mail properly dispatch[ed] at the close of operation. Thereby causing the mail to be delayed. Additionally, on several occasions you have been observed sleeping at your supervisor's desk. Thereby impeding the processing of mail timely.

3. Failure to properly provide "safety talks" to employees in a professional manner. Instead of personally reading information to your employees and engaging them in informational dialogue, you choose to simply pass a written "Safety Talk" around for signature.

4. Failure to be regular in Attendance. On several occasions you were required to timely document the request for "FMLA." You were unresponsive to this request for many months. Additionally you presently have a 14 day "paper suspension" for the charge of AWOL on May 4, 2000.

5. Failure to perform professionally within the capacity of your position. On several occasions you were observed distributing flyers advertising "night club" listing within your work operations causing a delay in workflow.

6. Failure to observe dress code becoming of a supervisor. On more than one occasion you have repeated reprimands concerning inappropriate clothing for the work environment. Despite numerous warnings you have continued to report to work in attire that is not appropriate for your position.

The Plaintiff has not indicated the consequences, if any, that were caused by the "Proposed Letter of Warning in Lieu of Time–Off Suspension" or the Performance Evaluation.

At the trial, the Plaintiff's supervisor, Phylis Alford, manager of distribution operations, testified that the Plaintiff was required to speak to her if he called in for any type of leave. Alford further testified that if Moore did not speak to her, he would be charged as being absent without leave. Further, Alford testified that when she first returned to the Western Nassau P & DC she met with supervisors, including Moore, and instructed them on the proper procedure for calling in with leave requests. Moore was the only supervisor who did not follow those instructions.

With regard to the incident in question, Alford testified that on May 4, 2000, the Plaintiff called in to the general clerk and said he was taking leave. At that time, the Plaintiff stated that he did not want to speak to Alford. As a result, Moore was charged as being absent without leave and was disciplined because he failed to follow instructions.

In response to the summary judgment motion by the USPS, the Court received a one page letter from the Plaintiff in which he states in pertinent part:

> Please understand that I am a diabetic person since 1999. I had certification on file as of May 4, 2000. In regard to the letter of suspension dated May 17, 2000, I should have been charged with Failure to Follow instructions. Although I was out for three days on sick leave FMLA, I was not paid for the time that I was out.
>
> The reason that I did not speak to Phylis Alford, on May 4, 2000, was because any time I spoke to her, she was disrespectful towards me and her response to me was such that she would say she was

not going to pay me if I did not come to work. She did not pay me. The charges made by Phyllis Alford are not true ... I did not demonstrate any irregularity in my attendance....

Reading the *pro se* complaint liberally, with respect to the FMLA, the Plaintiff appears to be asserting causes of action for (1) interference with benefits under the FMLA; and (2) retaliation for seeking a FMLA leave of absence.

## II. DISCUSSION

### A. Standard of Review

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir.2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 1356 n. 11, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e))).

In addition, the Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

Furthermore, the Second Circuit has cautioned that a district court may grant the motion only if the *pro se* party has

received notice that failure to respond to the motion "will be deemed a default." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). To comply with Second Circuit jurisprudence and Local Rule 56.2, the Defendant filed a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment." Also, the Defendant affixed a copy of Fed.R.Civ.P. 56 to the Notice.

## B. As to the Claim Brought for Interference with FMLA Rights.

■ The Plaintiff alleges that by issuing the May 17, 2000 "Proposed Letter of Warning in Lieu of Time–Off Suspension" the Defendant violated the FMLA.

■ The FMLA makes it unlawful for any employer either "to interfere with, restrain or deny the exercise of or the attempt to exercise, any right" it grants. 29 U.S.C. § 2612(a)(1)(c). To succeed on a cause of action for the denial of, or interference with benefits under the FMLA, a plaintiff must establish that: (1) he is an eligible employee under the FMLA; (2) the Defendant is an employer under the FMLA, as defined in 29 U.S.C. § 2611(4); (3) he was entitled to take leave under the FMLA, as defined in 29 U.S.C. § 2612(a)(1); (4) he gave notice to the defendant of his intention to take leave, as defined in 29 U.S.C. § 2612(e)(1) and 29 C.F.R. § 825.302–.303; and (5) that he was denied benefits to which he was entitled under the FMLA. *Santos v. Knitgoods Workers' Union, Local 155,* No. 99 Civ. 1499 (BSJ), 1999 WL 397500, at *3 (S.D.N.Y. June 15, 1999) *aff'd,* 252 F.3d 175 (2d Cir.2001); *Bond v. Sterling, Inc.,* 77 F.Supp.2d 300, 306 (N.D.N.Y.1999).

The FMLA also provides that "[a]n employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d). At the trial, Alford testified

that prior to the incident in question, she had met with supervisors at the Western Nassau P & DC, including Moore, and instructed them on the proper procedure for calling in with leave requests. This procedure required that prior to taking any kind of leave from work, supervisors such as the Plaintiff were required to speak to her; and if they did not speak to her, they would be charged as being absent without leave.

In his letter in opposition to the Defendant's motion for summary judgment, the Plaintiff admitted that he did not speak to Alford prior to taking his leave. Although the Plaintiff purports to justify his failure to follow proper procedures by stating that the reason he did not speak to Alford was "because anytime [he] spoke to her, she was disrespectful towards [him]," the Plaintiff does not cite to any facts which substantiate this claim.

The Court finds that the undisputed evidence reveals that the Plaintiff did not follow proper procedures in requesting leave and that the Defendant's issuance of the "Proposed Letter of Warning in Lieu of Time–Off Suspension" was not in violation of the FMLA. Accordingly, the Plaintiff's claim of interference with benefits under the FMLA is dismissed.

## C. As to the Claim of Retaliation Under the FMLA.

■ Reading the *pro se* complaint liberally, the Plaintiff may be asserting a claim of retaliation under the FMLA. namely, that the "Proposed Letter of Warning in Lieu of Time–Off Suspension" was issued in retaliation for seeking leave under the FMLA.

■ In analyzing such claims, Courts have borrowed the framework employed in cases brought pursuant to Title VII. *Bond,* 77 F.Supp.2d at 303. Thus, to establish a

prima facie case of retaliation under the FMLA, the Plaintiff must establish: (1) participation in a protected activity under the FMLA known to the defendant; (2) an employment action disadvantaging him, and (3) a causal connection between the protected activity and the adverse employment action. *Potenza v. City of New York,* 365 F.3d 165, 167 (2d Cir.2004).

The Court finds that none of these elements were established. As discussed above, the Plaintiff failed to demonstrate that he was engaged in a protected activity under the FMLA because he didn't follow the proper procedures in asking for leave. In addition, the Plaintiff received the "Proposed Letter of Warning in Lieu of Time–Off Suspension" for failing to follow the proper instructions concerning requests of leave not because he took the leave. With regard to the second factor, it is questionable as to whether the "Merit Performance Evaluation" or the "Proposed Letter of Warning in Lieu of Time–Off Suspension" constitutes an adverse employment action because the Plaintiff failed to establish what consequences, if any, were caused by the performance evaluation or letter of warning. *See Pellei v. Int'l Planned Parenthood Federation/Western Hemisphere Region, Inc.,* 1999 WL 787753, at *12 (S.D.N.Y. Sept. 30, 1999), No. 1999 U.S. Dist. LEXIS 15338, at *35 ("Negative evaluations, alone, without any accompanying adverse consequences are not adverse employment actions."). Third, even if the Court assumes that the Plaintiff properly sought leave under the FMLA, the Plaintiff received the unacceptable "Merit Performance Evaluation" for several reasons aside from the incident in question, including: failure to meet organizational goal; failure to dispatch all unit mail timely; failure to properly provide "safety talks" to employees in a professional manner; failure to perform professionally within the capacity of your position; and failure to observe dress code becoming of a supervisor. All of these reasons are non-discriminatory reasons having nothing to do with a retaliatory motive.

In the Court's view there is no evidence that support the Plaintiff's contention that the letter of warning and the Merit Performance Evaluation was issued in retaliation for the Plaintiff seeking FMLA leave on May 4, 2000. Accordingly, the Defendant's motion for summary judgment dismissing the FMLA retaliation claim is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the motion by the U.S.P.S. pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the Plaintiff's FMLA claim in its entirety is **GRANTED**; and it is further

**ORDERED,** that the Clerk of the Court is directed to enter judgment dismissing the complaint in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**