Debra PEAVEY, Plaintiff,

v.

A. ROSENBLUM, INC. & Bernard Rosenblum, Defendants.

No. 09–cv–3794 (ADS)(WDW).

United States District Court,
E.D. New York.

June 27, 2011.

Debra Peavey, Massapequa, NY, Plaintiff pro se.

Law Office of Frederick Eisenbud, Esq., by Frederick Eisenbud, Esq., of Counsel, Commack, NY, for the defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff *pro se* in this case, Debra Peavey, brought this action against her former employer, the defendant A. Rosenblum Inc., and its principal, Bernard Rosenblum, primarily to recover unpaid compensation allegedly due to her from a company profit sharing plan. All parties have now moved for summary judgment and have requested payment of attorneys' fees. In addition, the plaintiff has objected to the denial by United States Magistrate Judge William D. Wall of her motion for additional discovery. She has also moved to amend her complaint. For the reasons that follow, the Court denies all of the plaintiff's motions, and grants the defendants' motion for summary judgment. In addition, the Court denies the requests for attorneys' fees by both parties.

## I. BACKGROUND

In 1991, the corporate defendant A. Rosenblum Inc. hired the plaintiff Debra Peavey as the company's Assistant Comptroller. Between 1991 and 1999, Peavey rose to be the company's Comptroller, while also stealing $3.1 million dollars from her employer. Peavey's crime was discovered at the end of 1999, and on December 15, 1999, she left the company. Approximately eighteen months later, on May 5,

2001, Peavey plead guilty to grand larceny in Supreme Court, New York County. The court sentenced Peavey to two to six years in jail, and ordered her to pay $3.1 million dollars in restitution.

During her time as an employee at A. Rosenblum Inc., the company compensated Peavey in part by making contributions in her name to the A. Rosenblum Inc. Profit Sharing Plan ("the Profit Sharing Plan" or "the Plan"). Under the terms of the Profit Sharing Plan, Peavey's interest in this money fully vested in 1997, which meant that she had the right to receive the full value of these contributions when the Profit Sharing Plan terminated.

On April 1, 2002, approximately one year after Peavey's 2001 guilty plea, the Profit Sharing Plan did terminate, triggering Peavey's right to receive her share in the Plan. However, because Peavey had been fired from the company approximately two and a half years previous and was now serving time in jail, A. Rosenblum Inc. was not aware of Peavey's whereabouts— although the defendants do not suggest that they were especially diligent in their search for the plaintiff. Thus, in lieu of distributing the funds directly to Peavey, the company transferred Peavey's interest, the sum of $28,334.34, into a private retirement account that was under the defendants' control but held for Peavey's benefit.

When Peavey brought the present action more than seven years later, her share of the Profit Sharing Plan was still in this retirement account. The plaintiff's complaint, filed on September 2, 2009, seeks (1) payment of Peavey's share in the Profit Sharing Plan, (2) disclosure of documents related to the Profit Sharing Plan and damages for failure to timely disclose these documents, (3) damages for breach of fiduciary duty by the defendant Bernard Rosenblum as fiduciary for the Profit Sharing Plan, and (4) attorneys' fees.

On the date that she brought the present action, Peavey still also owed at least $292,000 in restitution to be paid to A. Rosenblum Inc., an amount far greater than the value of her interest in the Profit Sharing Plan. In fact, Peavey has recently been remanded to jail for failure to make the required restitution payments. However, while the plaintiff's criminal attorney previously indicated that Peavey intended to use her Profit Sharing Plan funds to offset her restitution obligations, the plaintiff has never formally agreed to this decision. The plaintiff contends that she declines to do so because the defendants have been recalcitrant in providing documents showing how much money was actually due to her under the Plan.

For their part, the defendants do not deny that they retained Peavey's Profit Sharing Plan funds under their own control based in part on the assumption that the funds would ultimately be used to pay Peavey's restitution. However, the defendants assert that once Peavey initiated this case and made a formal request for payment, they intended to comply with the plaintiff's request for documents and payment. Nevertheless, the defendants did not immediately disburse the funds to Peavey after she made her formal request, putatively on the grounds that that the Plan documents gave Peavey's ex-husband a right to a portion of the proceeds, and verification was needed to show that Peavey's ex-husband had relinquished that right. On March 25, 2010, Peavey provided the defendants with divorce documents that satisfied this requirement, and between May 5 and May 13, 2010, the defendants distributed the contents of her Profit Sharing Plan account—now the sum of $33,004.74—to Peavey.

In addition, following a formal request for documents from Peavey, the defendants also produced to Peavey on Febru-

ary 22, 2010, March 26, 2010, and April 15, 2010 various Plan-related documents, including, among other things, (1) the formal Plan organizational document; (2) account statements showing Peavey's interest in the Profit Sharing Plan in the years 1998, 1999, and 2000; and (3) account statements for the retirement account into which Peavey's share of the Profit Sharing Plan was deposited, from 2002 to date. Noticeably absent from this disclosure were statements showing the value of Peavey's interest in the Profit Sharing Plan in 2001 and 2002. The defendants maintain that these documents do not exist, but also assert that, if anything, this has benefitted Peavey. The defendants note that the Profit Sharing Plan as a whole lost value in 2001 and 2002 due to market fluctuations, and that during that time, no additional contributions were made in Peavey's name. Thus, Peavey's share would have also lost value during each of those years. However, because the defendants could not locate proper 2001 and 2002 valuations for Peavey's share when the Plan terminated in 2002, the defendants deposited into Peavey's account her share in the Plan as valued in 2000. Thus, according to the defendants, the amount deposited into her individual retirement account—based on the 2000 valuation—was greater than the value of her actual, but unknown, share in 2002.

On November 15, 2010, after the defendants had distributed the Profit Sharing Plan funds to Peavey and had disclosed the Plan-related documents—but before additional discovery had taken place—the defendants moved for summary judgment dismissing all of the plaintiff's claims. The defendants maintain that the plaintiff's claims are time-barred and mooted, and that to the extent that the defendants are subject to any penalties for delay in providing documents, the Court should exercise its discretion and decline to impose penalties. With respect to the plaintiff's

claim for breach of fiduciary duty, the defendants also maintain that the plaintiff has alleged no facts and adduced no evidence supporting this cause of action. As for attorneys' fees, the defendants not only maintain that the plaintiff has no basis for recovering attorneys' fees, but also that the plaintiff herself should be obligated to pay the defendants' attorneys' fees.

One month after the defendants moved for summary judgment, the plaintiff also moved for summary judgment on all of her claims. She maintains that the defendants have failed to produce documents that adequately show the full value of her participation in the Profit Sharing Plan, and she also asserts that the defendants should be penalized for their delay in producing the documents that they have produced. The plaintiff also moves to amend her complaint to assert additional bases for her breach of fiduciary duty claim, including allegations that Bernard Rosenblum (1) wrongfully terminated the Plan, (2) distributed her share of the Plan improperly, and (3) once the Plan terminated, mismanaged the account holding her money.

On December 15, 2010, the parties appeared before the Court in person, at which time the plaintiff moved for additional discovery. In response, the Court directed the parties to appear before Magistrate Judge Wall to address the plaintiff's request. On that same day, Judge Wall denied the plaintiff's motion for additional discovery. On December 30, 2010, the plaintiff then filed a letter with this Court objecting to Judge Wall's denial of discovery. In this decision, the Court will also rule on this objection.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under Fed.R.Civ.P. 56(c) is proper

only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" within the meaning of Fed.R.Civ.P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

## B. The Plaintiff's *Pro Se* Status

In reviewing the plaintiff's submissions, the Court is mindful that the plaintiff is proceeding *pro se* and that her submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); see also *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that the *pro se* plaintiff does not forfeit rights by virtue of her lack of legal training. See *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, district courts should "read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

The Court notes that the plaintiff in this case was initially represented by counsel, but her counsel has withdrawn. The defendants have suggested that, in spite of the plaintiff's current *pro se* status, she has continued to receive substantial aid from an attorney or multiple attorneys who have not made formal appearances in this case. The defendants thus request that, in light of this alleged fact, the Court should not accord the plaintiff the additional deference usually given to *pro se* parties.

It is true that some courts have found that a *pro se* party who receives substantial assistance from a non-appearing law-

yer should not be accorded the additional leeway generally given to *pro se* parties. *See, e.g., Couch v. Jabe,* No. 09–cv–434, 2010 WL 1416730, *1 n. 1 (W.D.Va. Apr. 8, 2010) ("ghostwriting' motions for a *pro se* plaintiff is contrary to the spirit of the Federal Rules of Civil Procedure and the privilege of liberal construction afforded to pro se litigants"). However, the Court declines to address this issue, as the Court finds that the outcome of the present motions would be unaffected even if the Court construed the plaintiff's filings more liberally.

## C. As to the Defendants' Motion for Summary Judgment

### 1. As to the Plaintiff's First Cause of Action: Request for Information

The plaintiff's first cause of action is pursuant to 29 U.S.C. § 1132(a)(1)(A), which provides that participants in plans regulated by the Employment Retirement Income Security Act ("ERISA") may bring suit for, among other things, failure to provide documents related to the participant's ERISA plan. *See* 29 U.S.C. § 1132(c). The parties agree that the plan at issue in this case, the Profit Sharing Plan, is governed by ERISA. In asserting this cause of action, the plaintiff seeks documents related to the Profit Sharing Plan, as well as a monetary sanction for the defendants' failure to timely provide these documents.

According to Peavey, she first requested documents related to the Profit Sharing Plan in February 2008, and made further requests in September and November 2008, as well as June 2009, November 2009, and February 2010. However, the defendants did not produce any documents to her until February 22, 2010, which the defendants then supplemented on March 26, 2010 and April 15, 2010. The defendants maintain that they did not produce documents until early 2010 because the

plaintiff's initial requests were made not to the defendants, but to various other persons, including the defendants' pension consultant, the United States Department of Labor, and the defendants' designated agent for service of process. According to the defendants, the Plan and ERISA only obligate them to respond to a request for documents if it is made directly to the company or to Bernard Rosenblum. The defendants maintain that the first such request was made on February 4, 2010, and that the defendants' production after this request was timely. The plaintiff disagrees with this contention.

The Court has reviewed the evidence presented and the parties' papers, and finds that only the plaintiff's February 2010 request obligated the defendants to produce documents. Further, the Court finds that the defendants' production of documents following that request was timely and sufficient. Thus, the plaintiff's request for documents has been properly satisfied, and there is no basis for this cause of action or for an award of penalties.

In addition, even if the Court were to reach a different conclusion on the timeliness of the defendants' production, the result concerning the imposition of penalties would be the same. ERISA provides that any penalty for failure to timely produce documents to plan participants is discretionary. *See* 29 U.S.C. § 1132(c)(1)(B); *Goldstein v. Group Ins. Plan for Admin. and Mgmt. Empl's of Fairchild Republic Company, Farmingdale Facility,* 940 F.Supp. 474, 480 (E.D.N.Y.1995) ("The decision whether to impose the penalty [for failure to timely produce documents] is within the discretion of the court."). Here, the Court finds that the plaintiff has not shown that any delay that may have occurred in providing Plan documents caused her substantial harm. Moreover, the sub-

missions provided to the Court offer no doubt that the plaintiff has failed to pay restitution to the defendants in an amount approaching ten times the value of her retirement account. Given these equitable considerations, the Court declines to award any sanctions to the plaintiff based on any delay that may have occurred in the production of documents.

## 2. As to the Plaintiff's Second Cause of Action: Recovery of Plan Benefits

■ The plaintiff's second cause of action is to recover the amount due to her under the Profit Sharing Plan, pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides that "[a] civil action may be brought … by a participant or beneficiary … to recover benefits due to him under the terms of his plan." As of May 13, 2010, the defendants had disbursed to the plaintiff the sum of $33,004.74, which were all of the funds in the account established by the defendants in 2002 to hold Peavey's share in the Profit Sharing Plan. The Court has reviewed the documents relevant to this disbursal, and concludes that the plaintiff has alleged no plausible facts and has presented no evidence showing that this is anything less than the full value due to her under the Profit Sharing Plan. The Court therefore finds that this cause of action is moot, and dismisses it.

## 3. As to the Plaintiff's Third Cause of Action: Breach of Fiduciary Duty

The plaintiff asserts her third cause of action only against Bernard Rosenblum, who served as the fiduciary for the Profit Sharing Plan. Peavey alleges in this cause of action that, in his management of the Plan, Rosenblum breached the fiduciary duty he owed to Plan participants. The plaintiff's complaint asserts no facts describing the basis for this claim, nor does it describe the nature of the alleged breach.

Moreover, the plaintiff has presented no evidence that supports this cause of action. The defendants' motion for summary judgment dismissing this claim based on the breach of fiduciary duty is therefore granted.

## 4. As to the Plaintiff's Fourth Cause of Action: Attorneys' Fees and Costs

■ Finally, the plaintiff also seeks to recover attorneys' fees and costs related to this action, pursuant to 29 U.S.C. § 1132(g)(1), which provides that "[i]n any action under this subchapter … by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

■ In determining whether to grant an award of attorneys' fees in ERISA cases, courts in the Second Circuit consider five factors:

(1) the degree of the offending party's culpability or bad faith,

(2) the ability of the offending party to satisfy an award of attorney's fees,

(3) whether an award of fees would deter other persons from acting similarly under like circumstances,

(4) the relative merits of the parties' positions, and

(5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 870 (2d Cir. 1987). The Court has considered each of these factors, and finds that, as a whole, they do not favor granting attorneys' fees to the plaintiff in this case. In the Court's view, the defendants have not acted in bad faith, and a grant of attorneys' fees would not deter improper conduct in others. Also, the plaintiff brought her suit only to

benefit herself, and at least with regard to her claim for breach of fiduciary duty, she has had no success on the merits. With respect to the plaintiff's first two causes of action, it is probable that the filing of this suit helped to bring about the defendants' disclosure of documents and disbursement of funds—although the defendants deny this. However, even assuming that this case did help the plaintiff achieve the ends she sought, the Court finds that this does not outweigh the other relevant factors that the Court must consider. The Court therefore declines to grant the plaintiff attorneys' fees in this case.

### D. As to the Plaintiff's Motions for Summary Judgment, to Amend, and for Additional Discovery

In response to the defendants' motion for summary judgment, the plaintiff has also moved for summary judgment on all four of her causes of action. For substantially the same reasons that the Court is granting summary judgment to the defendants on these four causes of action, the Court also denies the plaintiff's motion for summary judgment in her favor.

■ In addition, in the alternative, the plaintiff has moved to amend her complaint to allege additional facts in support of her third cause of action, namely, breach of fiduciary duty. The plaintiff has not submitted a proposed amended complaint in support of this motion, but she has described in general terms her proposed additional allegations, which include claims that Bernard Rosenblum wrongfully terminated the Profit Sharing Plan; mismanaged Peavey's share of the account; and distributed her share in the Plan improperly. The Court has reviewed these allegations in light of the evidence presently before the Court, and finds that the plaintiff has not described facts that support a plausible cause of action. The Court therefore concludes that there is no basis to permit the plaintiff to amend her complaint, and denies the plaintiff's motion to amend.

Consistent with these rulings, the Court also denies the plaintiff's objection to Magistrate Judge Wall's ruling denying her additional discovery, and finds that the plaintiff is not entitled to further discovery in this case.

### E. As to the Defendants' Motion for Attorneys' Fees and Costs

■ In addition to their motion for summary judgment, the defendants also have moved for attorneys' fees and costs pursuant to the same provision cited by the plaintiff in her fourth cause of action, 29 U.S.C. § 1132(g)(1). Again, that statute provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action *to either party.*" (Emphasis added).

The Court has considered the five factors noted above that are relevant to deciding whether to award attorneys' fees and costs in an ERISA case, and finds that such an award is not appropriate. To be sure, the plaintiff's actions in stealing from the defendants and failing to timely pay restitution demonstrate obvious bad faith. Nevertheless, ERISA gives Peavey the right to be provided documents related to the Plan and to recover her share in the Plan—even if that recovery should later be used to satisfy the plaintiff's restitution obligation. Peavey's prosecution of this lawsuit to accomplish these ends therefore does not rise to the level of conduct that must be deterred by an award of attorneys' fees. The defendants' motion for attorneys' fees and costs in therefore denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment is granted in its entirety, and the plaintiff's complaint is dismissed in its entirety; and it is further

**ORDERED** that the plaintiff's motion for summary judgment is denied in its entirety; and it is further

**ORDERED** that the plaintiff's motion to amend is denied; and it is further

**ORDERED** that the plaintiff's objections to Judge Wall's denial of discovery are denied; and it is further

**ORDERED** that the defendants' motion for attorneys' fees and costs is denied; and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to mark this case closed.

**SO ORDERED.**