**UNITED STATES of America,**
Appellee,

v.

**Roberto BETANCUR, Orlando Betancur, Jairo Betancur, Juan Fana, Jose M. Rosario, also known as Manuel, and Hector Santana, Defendants,**

Ana Liriano, Defendant–Appellant.

No. 03–1305.

United States Court of Appeals,
Second Circuit.

Jan. 5, 2004.

Paul Lieber, New York, N.Y, for Appellant.

Joshua A. Levine, Assistant United States Attorney, Southern District of New York, New York, N.Y, for Appellee.

Present: MESKILL, POOLER, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be AFFIRMED.

Familiarity is assumed as to the facts, the procedural context, and the specification of appellate issues. In 2000, a joint task force of the F.B.I. and the New York Police Department ("Task Force") began investigating Roberto Betancur ("Betancur") for narcotics trafficking. Government informant Nelly Montano ("Montano") purchased both heroin and cocaine from Betancur at Uptown Grocery, a business owned by Betancur and his brother, on three occasions. Betancur, Roberto Betancur, Orlando Betancur, Juan Fana and Jose M. Rosario were arrested on June 14, 2001 and eventually all pleaded guilty to narcotics conspiracy charges.

Liriano was Betancur's girlfriend in 2000 and 2001. The Task Force investigation revealed that Liriano actively participated in Betancur's narcotics conspiracy. Juan Fana, testifying for the Government, stated that Betancur handed Fana almost 1.5 kilograms of heroin from a car in which Liriano was sitting. He also testified that she was present on occasions when he dropped off thousands of dollars of drug money to Betancur and observed her sitting approximately two feet away from Betancur while he counted large sums of money. Fana also testified that Liriano passed messages to him from Betancur regarding narcotics transactions. Most importantly, on May 1, 2001, Liriano was present at Uptown Grocery when Montano—acting under the direction of the FBI—purchased approximately one kilogram of cocaine from Betancur and handed Betancur $28,000 in cash in exchange ("May 1, 2001 Transaction"). With Liriano sitting next to Montano, Betancur handed Montano a "brick" of cocaine and Montano removed some powder from the package to test it. Montano attempted to place the brick in her purse but it would not fit properly. Liriano took the cocaine from Montano, placed it in a separate bag, and then placed the cocaine back in Montano's purse in such a way as to conceal its contents.

On June 14, 2001, Liriano was arrested. Several months later, Betancur called Liriano from the Metropolitan Detention Center and tried to assure her that she could profess ignorance of his activities. Liriano responded, "Exactly. I was just your girlfriend[.]" Several months later, Liriano attended a proffer session at the U.S. Attorney's office. She stated that, with respect to the May 1, 2001 Transaction, she was present at Uptown Grocery that day, knew a narcotics transaction was taking place, saw the cocaine, and told Bentacur

to place the cocaine in another bag to conceal it.

On October 11, 2002, the jury returned a verdict of guilty for one count of conspiracy to distribute at least 500 grams of cocaine and one count of distributing, possession or aiding and abetting the distribution or possession of at least 500 grams of cocaine. On May 9, 2003, the district court sentenced Liriano principally to 33 months imprisonment. The court denied Liriano's motion for a downward departure based on her alleged psychiatric disorder involving depression, and the fact that she is the primary caretaker of her family.

■ On appeal, Liriano contends that the Government failed to present sufficient evidence to support her conviction. This court reviews *de novo* a challenge to the sufficiency of evidence supporting a criminal conviction, *United States v. Reyes*, 302 F.3d 48, 52–53 (2d Cir.2002), and must affirm if the evidence, when viewed in its totality and "in the light most favorable to the Government," would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt. *United States v. LaSpina*, 299 F.3d 165, 180 (2d Cir.2002) (quotation marks omitted) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This claim is without merit because, as the facts recited above make clear, there was sufficient evidence supporting Liriano's conviction.

■ Liriano also argues on appeal that she was unconstitutionally deprived of effective assistance of counsel at trial. As a procedural matter, it should be noted that Liriano's ineffective assistance claim can properly be considered on direct review. Although the Supreme Court has recently noted that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance," it also made clear that the Court

"do[es] not hold that ineffective-assistance claims must be reserved for collateral review." *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 1696, 155 L.Ed.2d 714 (2003). Following *Massaro*, this Circuit has stated that "[w]hen faced with a claim for ineffective assistance of counsel on direct appeal, [the court] may: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255; (2) remand the claim to the district court for necessary factfinding; or (3) decide the claim on the record before [the court]." *United States v. Morris*, 350 F.3d 32, 39 (2d Cir.2003) (citations omitted). Here, Liriano's ineffective assistance of counsel claim is properly before the court on appeal because it can be addressed based solely on the existing record.

■ Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must show that (1) "counsel's performance was deficient" such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687; and (2) "the deficient performance prejudiced the defense," *id.*, such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Liriano cannot meet her burden under *Strickland*. She offers three errors as the basis of her ineffective assistance claim. First, she claims that defense counsel erred in failing to challenge the sufficiency of the superseding indictment. This argument is unavailing because she utterly fails to discuss in her brief how the indictment was deficient. Further, the indictment itself is not defective in any way. Second, Liriano claims that defense counsel erred in failing to call two witnesses to impeach Special

Agent Pena's testimony because she claims that Agent Pena's testimony during her grand jury appearance contradicted certain aspects of her testimony at trial. Liriano, however, does not say what those contradictions are. Moreover, an attorney's decision "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best*, 219 F.3d 192, 201 (2d Cir.2000). Finally, defense counsel did cross-examine Agent Pena concerning discrepancies between her testimony before the grand jury, her testimony at trial, and omissions in notes that Pena took at Liriano's proffer session.

■ Third, Liriano claims that defense counsel erred by either not informing her of her right to testify in her own defense or by not permitting her to testify after she expressed a desire to do so. Because this argument is analyzed as an ineffective assistance of counsel claim, *See Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir.1997), Liriano must show that she was prejudiced by defense counsel's alleged error, *Strickland*, 466 U.S. at 688. This she cannot do because she has made no attempt to explain how the substance of her testimony could have changed the outcome of her trial. The jury was presented with substantial evidence of Liriano's guilt, and she has not suggested that her testimony could have convinced the jury of her innocence. Accordingly, even if Liriano could establish that her counsel's conduct was deficient, she has made no showing of prejudice.

■ As a final matter, Liriano challenges her sentence by arguing that the district court failed to consider at sentencing (1) the fact that she is the primary financial support for her family, including her four-year-old daughter; and (2) the fact that her psychiatrist found her to be suffering from a "major depressive disorder with psychotic features" and is suicidal. However, because the record indicates that the district court did not misapprehend its authority to downwardly depart, its refusal to do so is not reviewable. *United States v. Aponte*, 235 F.3d 802, 803 (2d Cir.2000).

Accordingly, based on the reasons stated above, the judgment of conviction is hereby AFFIRMED.