Alberto CASTELLANO, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 10 Civ. 4000(VM), 01 Cr. 619(VM).

United States District Court, S.D. New York.

June 28, 2011.

Alberto Castellano, Bruceton Mills, WV, pro se.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Petitioner Alberto Castellano ("Castellano") brought this pro se motion pursuant to 28 U.S.C. § 2255 ("§ 2255") to vacate, set aside, or otherwise correct his sentence. Castellano is serving a sentence of life plus 100 years of imprisonment following convictions for racketeering and related offenses. Castellano contends that his sentence must be vacated because, among other things, he was denied his Sixth Amendment right to effective assistance of counsel. For the reasons discussed below, the Court DENIES Castellano's petition.

## I. BACKGROUND [1]

From 1996 to 2001, Castellano belonged to a street organization (the "Organization") that committed numerous armed robberies targeting drug dealers. Acting on inside tips, the Organization stole vast quantities of cash and narcotics. The cash was distributed among the robbers, with a portion given to the tipster, or "santero," who had informed the Organization about the target. The narcotics, primarily cocaine and heroin, were sold on the street. In the course of the conspiracy, members of the Organization killed at least two individuals, Joaquin Rodriguez ("Rodriguez") and Raul Ferreira ("Ferreira").

On January 18, 2005, the grand jury returned a superseding indictment ("Superseding Indictment") containing twenty-two counts against Castellano and eleven others for racketeering (count one); conspiracy to commit racketeering (count two); conspiracy to commit robbery (counts three through ten); conspiracy to distribute narcotics (count eleven); carrying, brandishing and discharging a firearm (counts twelve through nineteen); and murder in furtherance of a narcotics conspiracy (counts twenty through twenty-two).

Castellano, together with co-defendant Franklin Minaya ("Minaya"), proceeded to a jury trial before the Honorable Robert L. Carter. Castellano was represented at trial by J. Bruce Maffeo, Esq. ("Maffeo"). The Government's proof included the testimony of cooperating witnesses, including Juan Carlos Hernandez and Roy Valdez Moncion ("Valdez"), who described in detail Castellano's participation in each of the charged crimes. The Government also presented corroborating evidence including an eyewitness identification by one of the robbery victims, Rafael Lara ("Lara"); the

---

**1.** The factual and procedural summary below is derived from the following documents and any exhibits attached thereto: Motion to Vacate Convictions and Set Aside or Crrect [sic] Sentence Pursuant to Title 28 U.S.C. § 2255, dated May 14, 2010 ("Mot."); Motion to Amend and Supplement Defendant Castellano Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody, dated July 30, 2010; Memorandum of Law in Opposition to Castellano's Motion to Vacate, Set Aside, or Correct Sentence, dated February 18, 2011; Traverse to the Government's Response to Castellano's Section 2255 Motion, dated March 25, 2011; and a transcript of the jury trial held on September 18–21, 25–28, 2006, and October 3–6, 10, 2006. Except where specifically referenced, no further citation to these sources will be made.

testimony of police officers who arrested Castellano and recovered loaded firearms from his possession; and the testimony of a medical examiner regarding Ferreira's manner of death. Maffeo did not present a direct case on behalf of Castellano. Castellano was convicted of all fourteen counts against him.

On April 2, 2008, Judge Carter imposed a sentence on Castellano of life plus 105 years of imprisonment. Castellano was represented at sentencing by Thomas F.X. Dunn, Esq. ("Dunn"). Specifically, Judge Carter sentenced Castellano to life imprisonment on count one, the racketeering charge, with concurrent terms of 240 months on each of counts two, four, five, six, eight, ten and twenty-two and a concurrent term of 120 months on count eleven. Judge Carter imposed consecutive terms of 300 months on each of counts fifteen, sixteen, seventeen and eighteen, which related to brandishing and discharging a firearm, and an additional consecutive term of sixty months on count thirteen, which related to carrying a firearm.

Castellano appealed his convictions and sentence to the United States Court of Appeals for the Second Circuit. Dunn continued to represent Castellano on appeal. On April 1, 2009, the Second Circuit affirmed Castellano's convictions and affirmed his sentence on thirteen of the fourteen counts of conviction. *See United States v. Minaya*, 321 Fed.Appx. 37 (2d Cir.2009). The Second Circuit rejected Castellano's argument that his convictions should be reversed for "legally insufficient credible evidence," finding that the credibility of cooperating witnesses was an issue for the jury and that the cooperators' testimony was corroborated by "extensive [other] evidence." *Id.* at 40. The Second Circuit also rejected Castellano's objections to the consecutive terms of 300 months imposed on each of counts fifteen, sixteen, seventeen and eighteen, and re-

jected his contention that his sentence was substantively unreasonable. *Id.* at 41–42. The sole issue on which the Second Circuit reversed was the sixty-month consecutive term imposed on count thirteen. *Id.* at 42–43. Accordingly, the Second Circuit vacated Castellano's sentence on count thirteen and affirmed his convictions and sentence of life plus 100 years. *Id.* at 43.

Castellano filed the instant petition on May 14, 2010, arguing that he was denied his Sixth Amendment right to effective assistance of counsel. In particular, Castellano alleges that trial counsel was ineffective because he failed to: (1) move to dismiss the Superseding Indictment on the grounds that (a) it was not executed by the foreperson and (b) it was obtained by fraud or misconduct; (2) present an alibi witness absolving Castellano's involvement in Ferreira's murder; (3) interview potential witnesses for the defense; (4) investigate possible coaching of an eyewitness by New York City Police Department ("NYPD") Detective Stephen Kelly ("Kelly"); (5) allow Castellano to testify in his own defense; (6) object to possible juror bias on the grounds that (a) Juror No. 6 expressed fear, (b) Juror No. 8 expressed fear and (c) the expressed fear of Juror No. 6 and/or Juror No. 8 may have tainted the other jurors; (7) object to the replacement of two jurors with alternate jurors after jury deliberations had begun; (8) object to a juror's missing ten days of trial; and (9) object when a juror was seen speaking with a relative of one of the murder victims outside the courtroom. Finally, Castellano alleges that appellate counsel was ineffective for failing to argue on direct appeal the ineffectiveness of trial counsel.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

As a starting point, the Court notes that Castellano is a pro se litigant.

Accordingly, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993) (*quoting Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). The Court must construe Castellano's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). A pro se litigant, however, is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole,* 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

█ A person in federal custody may move to vacate, set aside, or correct his sentence if it was imposed in violation of "the Constitution or laws of the United States, or the court was without jurisdiction to impose such a sentence, or ... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Claims of ineffective assistance of counsel may be raised under § 2255 and are not barred for failure to raise them on direct appeal. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

█ The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *See Kimmelman v. Morrison,* 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In *Strickland v. Washington,* the Supreme Court established a two-part test to determine whether defense counsel's assistance was ineffective. *See* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness ... under prevailing norms." *Id.* at 688–89, 104 S.Ct. 2052. Second, the defendant must show that he suffered prejudice as a result of defense counsel's deficient performance. *See id.* at 693, 104 S.Ct. 2052. Prejudice is established where "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

█ Pursuant to *Strickland* and its progeny, counsel has a duty to investigate. *See id.* at 691, 104 S.Ct. 2052. Counsel's decision not to investigate must be assessed for reasonableness under the circumstances. *See id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. 2052. Consequently, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001).

█ A criminal defendant's Sixth Amendment right to counsel includes the right to counsel on their first appeal. *See Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001). To demonstrate ineffective assistance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). Rather, Castellano's ineffective assistance of appellate counsel claim can prevail only if he can show that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

## B. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### 1. Failure to Move to Dismiss the Indictment

 Castellano argues that Maffeo was ineffective for failing to move to dismiss the Superseding Indictment on the grounds that it was not executed by the foreperson and was obtained by fraud or misconduct.

The Court has reviewed the Superseding Indictment and finds that it was executed by the foreperson and by United States Attorney David N. Kelley on January 18, 2005. In support of his claim that the Superseding Indictment was not executed, Castellano offers what appears to be the signature page of a redacted indictment that was prepared by the Government for the jury. (See Mot. Ex. D.) The redacted indictment eliminated references to racketeering acts and substantive counts about which no proof was offered at trial. As a result, the redacted indictment contained seventeen counts rather than the twenty-two counts charged in the Superseding Indictment. The Court concludes that the unexecuted signature page submitted by Castellano is from the redacted indictment and not the operative Superseding Indictment because the unexecuted signature page refers to the murder of Ferreira in count seventeen, while Ferreira's murder was charged in count twenty-two of the Superseding Indictment. Therefore, Castellano has not provided any reason to disturb the Court's finding that the Superseding Indictment was in fact executed.

Further, Castellano has not established that the Superseding Indictment was obtained by fraud or misconduct. In support of this claim, Castellano makes sweeping allegations of fraud and misconduct by federal prosecutors and district courts in Milwaukee, San Diego and the Seventh Circuit. None of these allegations even pertain to the Southern District of New York, let alone to this case. Consequently, Castellano has not established that Maffeo's failure to move to dismiss the Superseding Indictment was objectively unreasonable.

### 2. Failure to Present an Alibi Witness

 Castellano argues that Maffeo should have presented an alibi witness absolving his involvement in the murder of Ferreira. Count twenty-two of the Superseding Indictment charged that on or about May 1, 2001, Castellano, Minaya and others murdered Ferreira in furtherance of a narcotics conspiracy. Ferreira was one of the santeros for the Organization, and members of the Organization came to believe that Ferreira had given a valuable tip to another robbery crew. The Government's proof at trial included the testimony of cooperating witness Valdez. Valdez testified that he and Minaya strangled Ferreira with an electrical cord and that Castellano slit Ferreira's neck with a kitchen knife. A medical examiner who performed the autopsy confirmed that Ferreira died from an incision to the neck. A crime scene officer from the NYPD testified that he responded to Ferreira's apartment at 11:10 a.m. on May 1, 2001.

In support of his claim that Maffeo should have presented an alibi witness for the murder, Castellano offers the affidavit of Emille Castellanos. Emille Castellanos, who appears to be the mother of Castellano's children, states: "The afternoon of May 1, 2001 Raul Ferreira was found murdered.... [O]n Tuesday May 1, 2001 Alberto Castellanos [sic] came home from work, took a shower and then a nap, he ate his supper and stayed in the house for the rest of the day." (Mot. Ex. B, Emille M. Castellanos 8/25/09 Aff. at 1.) Emille Castellanos's testimony regarding Castellano's whereabouts on the afternoon and evening

of May 1, 2001, would not have been probative of Castellano's involvement in Ferreira's murder because Ferreira was murdered before 11:10 a.m. on that date. As a result, Maffeo was not ineffective for failing to present Emille Castellanos's testimony. *See Williams v. Phillips,* 297 Fed. Appx. 56, 58–59 (2d Cir.2008) (counsel not ineffective for failing to prepare alibi witness where witness "did not account for [petitioner's] whereabouts during the entire time period in question").

### 3. *Failure to Investigate*

 Castellano next argues that Maffeo was ineffective for failing to interview potential witnesses for the defense. At trial, the Government presented the testimony of Ferreira's sister, Myra Ferreira, who discovered her brother's body. Myra Ferreira testified that she last spoke to Ferreira on April 27, 2001, and discovered his body three or four days later. She collected drugs that were strewn around Ferreira's body and then contacted the police.

In support of his claim of failure to investigate, Castellano offers two affidavits of Griny Castellanos. Griny Castellanos states that she was present when Myra Ferreira discovered Ferreira's body and that she "observed Raul Ferreira's family members touch and move various items that were in the apartment." (Mot. Ex. B, Griny Castellanos 11/23/09 Aff. at 1.) She further states that she and her daughter, Cynthia Pichardo ("Pichardo"), were willing to testify on behalf of Castellano but were never called as witnesses. (Mot. Ex. B, Griny Castellanos 11/23/09 Aff. at 2; Mot. Ex. B, Griny Castellanos 6/29/09 Aff. at 1.) Although counsel has a general duty to investigate, Castellano's claim of ineffective assistance based on failure to call Griny Castellanos or Pichardo fails. The jury heard Myra Ferreira testify that she removed the drugs from Ferreira's body before calling the police. Griny Castellanos's

testimony to the same effect "would not have undermined confidence in the jury's guilty verdict." *Bierenbaum v. Graham,* 607 F.3d 36, 54 (2d Cir.2010) (counsel not ineffective for failing to call witness whose testimony would have been consistent with the prosecution's theory). Castellano's claim based on failure to call Pichardo also is without merit because he has not identified any testimony she would have offered, let alone testimony that would have undermined confidence in the jury verdict. *See id.*

### 4. *Allegations Regarding Witness Coaching*

 Castellano submits that "a witness was observed outside the Court asking Detective Kelly to assist him in identifying Mr. Castellano Again [sic]." (Mot. at 13.) In support of this claim, Castellano offers the affidavits of Andrea Lora and Ramon Lora. Each affidavit states that on September 28, 2006, the affiant observed Lara, a victim of one of the charged robberies, speaking with Lara's attorney outside of the courtroom. According to the affidavits, Lara stated to his attorney: "If I ever saw Alberto Castellano outside on the street I would not be able to recognize him or know who he was." (Mot. Ex. C, Andrea Lora 8/12/09 Aff.; Mot. Ex. C, Ramon Lora 8/7/09 Aff. at 1.) Lara proceeded to identify Castellano in court.

The Loras' affidavits do not support Castellano's claim that Kelly or any other representative of the Government was speaking to Lara immediately prior to his testimony. Rather, the Loras state that Lara was speaking to Lara's own attorney, who was present because Lara testified pursuant to a grant of testimonial immunity. Even if there were something improper about a witness speaking to his own attorney prior to testifying, "any improper coaching goes to the weight of the witness's testimony, not admissibility." *Unit-*

ed States v. Fearon–Hales, 224 Fed.Appx. 109, 112 (2d Cir.2007). Here, Maffeo had the opportunity to cross-examine Lara and he did in fact cross-examine him. See id. Maffeo also raised questions about Lara's credibility in his closing argument. See id. Castellano does not explain what more Maffeo reasonably could or should have done to undermine Lara's credibility. Nor does he establish any likelihood that additional efforts on that line of inquiry would have altered the result of the trial.

### 5. Failure to Allow Castellano to Testify

██ Castellano alleges, without any elaboration, that Maffeo was ineffective because he "fail[ed] to allow [Castellano] to testify in his own defense creating a conflict of interest." (Mot. at 20; Mot. Ex. A, Castellano 2/2/10 Aff. ¶ G.) In response, Maffeo submitted an affirmation, which states in relevant part:

> I specifically recall that we discussed his right to testify on several occasions both before and during trial. During those discussions, I advised Castellano that while the decision to testify ultimately was his to make, I believed that it was against his interest to do so. Among other reasons, it was my belief then, as it is now, that by testifying on his own behalf, Castellano would have corroborated aspects of the testimony offered by the various cooperating witnesses and exposed him to cross-examination that would have opened the door to potentially devastating testimony from a family member who spoke with Castellano after the murder in which he was charged and whom the government elected not to call for strategic reasons as part of its direct case. At no time did Castellano object to my advice.

(Maffeo 10/23/10 Aff. ¶ 3.)

The Court finds that Castellano's assertions are vague and conclusory, while Maf-

feo has put forward "clear, sensible, strategic reasons for his decision to advise [Castellano] against testifying." See United States v. Fleurimont, 401 Fed.Appx. 580, 582 (2d Cir.2010); see also Stewart v. Greene, No. 05 Civ. 0566, 2009 WL 4030833, at *3 (S.D.N.Y. Nov. 19, 2009) ("Self-serving, conclusory allegations are insufficient to establish ineffective assistance of counsel."). Under these circumstances, Castellano has not established that Maffeo's representation fell below an objective standard of reasonableness. Moreover, Castellano cannot establish that he was prejudiced by Maffeo's alleged error because he "has made no attempt to explain how the substance of [his] testimony could have changed the outcome of his trial." See United States v. Betancur, 84 Fed.Appx. 131, 135 (2d Cir.2004). Castellano therefore fails to satisfy either part of the Strickland test.

### 6. Allegations Regarding Juror Bias and Alternate Jurors

Castellano raises numerous issues relating to possible juror bias and the use of alternate jurors. The jury retired to deliberate on the afternoon of October 4, 2006. The following morning, the court received a jury note indicating that Juror No. 8 recognized one of the spectators in the courtroom as he left the previous day. Judge Carter questioned Juror No. 8 regarding the note and learned that Juror No. 8 recognized the spectator from his workplace and believed that she was a relative of Castellano or Minaya. As a result, Juror No. 8 stated that he was afraid to render a verdict. Judge Carter proceeded to question each juror separately to determine what the other jurors knew about Juror No. 8's concern. None of the jurors' responses indicated that Juror No. 8 had expressed fear in the jury room. However, Juror No. 6 advised Judge Carter that, when Juror No. 8 told

her that he recognized a spectator, she thought that was "scary" (Tr. 1375:17; 1376:22) and "frightening" (Tr. 1375:23). Juror No. 6 stated that she was afraid to render a verdict because she lived in the neighborhood where many of the acts charged in the Superseding Indictment had occurred. Maffeo moved to dismiss Juror No. 6, and Judge Carter granted Maffeo's motion. Judge Carter also dismissed Juror No. 8.

Two alternate jurors were called back to replace Jurors No. 6 and 8. After confirming on the record that both alternates were present for the entirety of the court's charge, Judge Carter instructed the jury to disregard the "hour or 45 minutes" of deliberations that had taken place on October 4, 2006, and to "start again[,] start anew." (Tr. 1408:1–3.) The jury began the second round of deliberations on the morning of October 6, 2006, and it reached a verdict on October 10, 2006.

■ Castellano cannot show deficient performance or prejudice stemming from any bias on the part of Juror No. 6 or Juror No. 8 because both jurors were dismissed and did not take part in the verdict. Under the circumstances, Castellano "does not explain why his counsel was neglectful in not also moving for a mistrial, or why his decision was an objectively unreasonable exercise of professional judgment ... or any likelihood that [Judge Carter] would have granted a mistrial." *See Colasuonno v. United States,* No. 08 Civ. 6549, 2009 WL 2523886, at *3 (S.D.N.Y. Aug. 18, 2009). Nor can Castellano show prejudice stemming from any alleged taint caused by Juror No. 6 or Juror No. 8. Judge Carter conducted an inquiry of the remaining jurors to determine whether Juror No. 8 had shared his fear with them and concluded that there had been no taint. The decision to allow the remaining jurors to proceed to a verdict was within Judge Carter's broad discretion, *see United States v. Ruggiero,* 928 F.2d 1289, 1301 (2d Cir.1991), and it was not objectively unreasonable for Maffeo to fail to object to it.

■ Similarly, it was not objectively unreasonable for Maffeo to fail to object to the use of alternate jurors to replace Juror No. 6 and Juror No. 8. Castellano claims it was improper to allow the alternates to deliberate because they were not present for the entirety of the trial and because jury deliberations were already in progress when the alternates were called back. These claims lack factual and legal support. There is nothing in the record to suggest that the alternate jurors missed any portion of the trial. To the contrary, before the second round of deliberations began, Judge Carter confirmed that both alternates had been present through the court's charge and supplementary charge given on the afternoon of October 4, 2006. As to deliberations, although the jury had deliberated for approximately forty-five minutes to an hour on the afternoon of October 4, 2006, Judge Carter properly instructed the jury to "start again" when the two alternates joined the jury on the morning of October 6, 2006. *See United States v. Murtaugh,* 382 Fed.Appx. 83, 86 (2d Cir.2010). Moreover, because the jury deliberated for a total of approximately seven hours over two days, there is no support for Castellano's suggestion that the jury failed to begin deliberating anew. *See id.* Because there was no error in failing to object to the use of alternate jurors, Castellano's claim of ineffectiveness similarly fails. *See United States v. Dessources,* 117 Fed.Appx. 146, 148 (2d Cir. 2004).

■ Castellano also claims that Maffeo was ineffective for failing to object to a juror's missing ten days of trial because he was in New Rochelle. Again, there is no factual basis in the record for the claim

that any juror missed ten days of trial, and therefore no basis to conclude that Maffeo's failure to object was unreasonable.

■ Castellano's final claim pertaining to juror conduct is that Maffeo unreasonably failed to raise the issue of juror bias after a juror was seen speaking with a relative of one of the murder victims outside of the courtroom. This claim appears to be a reference to an incident that occurred on the afternoon of September 27, 2006. Several of Castellano's family members who were present for the trial had a conversation with a spectator they had noticed in the courtroom. The spectator informed the family members that she was a friend of one of the jurors, and the family members observed the spectator speaking to Kelly and apparently leaving the courthouse with two jurors. Maffeo promptly brought this issue to the court's attention on the morning of September 28, 2006. At that time, the Government explained that the spectator was a sister of Rodriguez, one of the murder victims in the case, and that she interpreted Castellano's family members' comments as exerting pressure on her to leave. In an effort to diffuse the situation, the spectator responded that she was present with a juror, but in fact she had no relationship with any juror in the case. Maffeo requested, and Judge Carter agreed to conduct, an inquiry of the jurors as to whether they had had any contact with an outsider regarding the case. Although Castellano submits that the record does not reflect that an inquiry was conducted, in fact, Judge Carter did conduct the inquiry and confirmed that no juror had been contacted by an outsider:

THE COURT: Have any of you been contacted by any outsider? No.

(Tr. 994:22–23.) Castellano does not explain why it was objectively unreasonable for Maffeo not to object further. Even if Maffeo had made an additional objection, Castellano has not established any likelihood that Judge Carter would have granted a mistrial. Consequently, Castellano has failed to demonstrate either part of the *Strickland* test.

### 7. *Other Claims*

■ Castellano also alleges, without any supporting facts or argument, that Maffeo was ineffective because he failed to investigate a defense of innocence, interview or investigate Government witnesses, impeach Government witnesses and defend Castellano's right to a speedy trial. He further claims that Dunn was ineffective because he failed to move for a downward departure at sentencing. These allegations are too conclusory to meet *Strickland's* rigorous requirements. *See Matura v. United States*, 875 F.Supp. 235, 237–38 (S.D.N.Y.1995) (rejecting bald assertion of counsel's deficiency as too conclusory to overcome *Strickland's* presumption that counsel acted reasonably). Similarly, Castellano's fleeting assertions that he is "actually Innocent [sic]" (Mot. at 2) and suffered "Coercion [sic] and duress" (Mot. at 20) are too vague and conclusory to warrant relief under § 2255. *See Belloso-Ibarra v. United States*, No. 09 Civ. 8216, 2010 WL 431904, at *3 (S.D.N.Y. Feb. 8, 2010) ("[A] federal habeas petition may be dismissed if it contains only vague or conclusory allegations." (internal quotation marks omitted)).

### C. *INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL*

■ Castellano argues that Dunn was constitutionally ineffective on direct appeal because he omitted the stronger issue of Maffeo's ineffectiveness at trial while pursuing the weaker issues of credibility and legal insufficiency of the evidence. As an initial matter, the Court notes that "[i]n most cases a motion brought under § 2255 is preferable to di-

rect appeal for deciding claims of ineffective assistance," and the Second Circuit may decline to hear claims of ineffective assistance of trial counsel on that basis. *See United States v. Hossaini*, 407 Fed. Appx. 556, 558 (2d Cir.2011) (declining to hear claim of ineffective assistance of trial counsel on direct review). Even if the Second Circuit would have heard the claim, Castellano cannot establish that the omitted claim of ineffectiveness was clearly stronger than the issues Dunn did raise. *See Morales v. United States*, 635 F.3d 39, 42 (2d Cir.2011) (appellate counsel not ineffective for failing to raise issue that lacked merit).

Because Castellano has not sufficiently demonstrated that he has any plausible claim, and because a review of the record of the case conclusively shows that he is entitled to no relief, the Court finds that no evidentiary hearing on the petition is required. *See* § 2255(b); *Morales*, 635 F.3d at 45.

### III. *MOTION TO AMEND*

On May 19, 2011, Castellano filed a Motion for Leave to Amend § 2255 Petition seeking permission to resubmit his reply to the Government's response to include a summary page that was inadvertently omitted. The Court has reviewed Castellano's reply and finds that it is consecutively paginated and includes the summary page. The Court therefore denies as moot Castellano's motion to amend.

### IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 1) of petitioner Alberto Castellano ("Castellano") to vacate, set aside, or otherwise correct his conviction and sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") is DENIED; and it is further

**ORDERED** that the motion (Docket No. 25) of Castellano for leave to amend his § 2255 petition is DENIED as moot.

The Clerk of Court is directed to terminate any pending motions and to close this case.

As Castellano has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(1)(B).

**SO ORDERED.**